THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ARLEN BELL, Defendant-Appellant.

Third District   No. 3—85—0644

Opinion filed January 15, 1987.

Kenneth D. Brown, of State Appellate Defender's Office, of Ottawa, for appellant.

Joan Scott, State's Attorney, of Lewistown (Gary F. Gnidovec, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

Arlen Bell was charged by information with the murders of his parents, Howard and Nancy Bell. Following a jury trial in the circuit court of Fulton County, Bell was found guilty of both murders and sentenced to natural-life imprisonment. On appeal, Bell seeks to have his convictions reversed and the cause remanded for a new trial. The defendant asserts that his appointed defense counsel committed multiple errors, the cumulative effect of which denied him effective assistance of counsel. We agree with the defendant. Accordingly, we reverse and remand for a new trial.

Howard and Nancy Bell were shot to death on March 8, 1985. The State maintained that the Bells were killed by their eldest son, Arlen, because of some long-standing family disputes they had been unable to resolve. During the initial stages of the investigation of the murders, which began on the evening of March 8, the defendant claimed he was not present when his parents were shot. Later that evening, the defendant agreed to accompany law-enforcement officers to his home and to let them see the clothing he wore earlier in the day. While en route to his apartment, Bell told Lieutenant Daniel Daly of the Fulton County sheriff's department that he killed his father in self-defense after he saw his father kill his mother. After the defendant and the law-enforcement officials left Bell's apartment with .22-caliber ammunition and empty casings and the clothing he had worn earlier, they went to an interview room at the Galesburg police department, where Bell was given *Miranda* warnings and agreed to answer additional questions. Daly said that Bell originally repeated that he killed his father in self-defense after he saw his father kill his mother. According to Daly, after he and Bell spoke further, Bell later confessed to Daly that this version, too, was incorrect and that he actually shot and killed both of his parents. Upon Daly's request, Bell repeated the last statement of events so that it could be tape-recorded.

When he testified at trial, the defendant again denied killing his mother and stated that he killed his father in self-defense. Bell testified that on the afternoon of his parents' deaths, his father and mother argued and his father was verbally abusive to both Arlen and his mother. He testified that he left his parents alone and went outside. Arlen stated that approximately 20 minutes later, his father came outside and began striking him and yelling at him, and continued to do so as they returned to the house. After they entered the family home and his father went into the bathroom, Arlen discovered that his mother had been shot while lying on the couch. Arlen testified that he picked up the .22-caliber rifle he saw near the front door, then observed his father running at him with a folding chair. Arlen said that he screamed at his father to stop but he did not, so Arlen shot him in the side. Howard Bell then returned to the bathroom and shut the door; Arlen stated that he fired several shots through the door because he was frightened and did not want his father to come after him again. Howard Bell then exited the bathroom. Arlen said that his father struggled for possession of the rifle, knocked him down, and told Arlen that he was going to kill him. His father then fell down, according to Arlen, and Arlen shot him several times, kill-

ing him. There were no other witnesses to the murders, and Bell was the only person who testified for the defense.

After the jury found him guilty of the murders, Bell filed *pro se* motions for a new trial and for appointment of new counsel on grounds that he received ineffective representation from John Clark, the public defender of Fulton County. Thomas Maas was appointed to consult with the defendant and advise him with respect to these motions, and Clark was permitted to withdraw as Bell's attorney of record. Bell's motion for a new trial was denied and the office of the State Appellate Defender was appointed to represent him for purposes of this appeal. On appeal, Bell alleges that the representation he received from John Clark failed to subject the State's case to meaningful adversarial testing and that, but for counsel's errors, the outcome of the trial would have been different. Bell contends that Clark made the following errors: (1) failed to adequately investigate, interview, and call to the stand seven witnesses who were known to him and whose testimony would have corroborated Bell's self-defense theory; (2) failed to impeach the testimony of the defendant's brother, Kevin Bell, who was a critical witness for the State and whose unimpeached testimony left the jury with the impression that Howard and Nancy Bell were nonviolent individuals; (3) failed to file a motion to suppress the defendant's confession to Officer Daly of the Fulton County sheriff's department although there was evidence that the statements were involuntary; (4) failed to tender a jury instruction for the lesser included offense of voluntary manslaughter even though Bell testified that he acted in self-defense; (5) failed to object to any of the 133 exhibits offered by the State, including the tape-recorded statement, the typed transcript of the statement, and nine exhibits containing bloodstains which were not identified as human blood; (6) failed to offer evidence to show that the allegations of child abuse filed against the defendant by his parents were determined to be unfounded by the Department of Children and Family Services; (7) failed to request a court-ordered examination of the defendant by a psychiatrist selected by the defense and failed to request a fitness hearing in spite of Bell's history of mental problems; (8) failed to object to improper questioning by the prosecutor during *voir dire* which served to indoctrinate the jurors as to the State's theory of the case; (9) failed to object to improper and prejudicial comments made by the prosecutor during closing arguments; (10) failed to move for a change of venue; and (11) failed to seek a pretrial order compelling the Department of Children and Family Services to disclose information obtained during the investigation of reports of child abuse in Howard and

Nancy Bell's home.

Whether the representation by his attorney denied the defendant effective assistance of counsel is to be determined under the standard set out in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and adopted by our supreme court in *People v. Albanese* (1984), 104 Ill. 2d 504, 525-527, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061. A defendant must show that his trial counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different had there not been ineffective assistance of counsel (*Strickland v. Washington* (1984), 466 U.S. 668, 687-695, 80 L. Ed. 2d 674, 693-698, 104 S. Ct. 2052, 2064-2068). A reviewing court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance (466 U.S. 668, 689, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065-66); additionally, errors in trial strategy or judgment alone do not establish that the representation was incompetent (*People v. Howard* (1981), 94 Ill. App. 3d 797). Thus, the general rule is that courts will not disturb a conviction on the basis of ineffective assistance of counsel unless the totality of counsel's conduct indicates his actual incompetence. Judging Clark's performance by the standards established in *Strickland,* we are compelled to find that due to the cumulative effect of trial counsel's errors, his duty to his client was inadequately discharged and that Bell was sufficiently prejudiced to be entitled to a new trial.

Bell asserts that Clark's failure to adequately investigate, interview, and call several available witnesses to testify constituted incompetence which substantially prejudiced his case. Bell's defense at trial was that his father killed his mother and that he then shot his father in self-defense. He contends that the witnesses could have testified about the victims' violent and abusive characters and about Howard Bell's specific acts of past aggression toward the defendant. Bell maintains that this testimony would have supported his otherwise uncorroborated defense. A victim's aggressive and violent character can support a theory of self-defense in two ways. First, the defendant's awareness of the victim's violent tendencies may make the use of deadly force a reasonable response to threatening behavior in an altercation. Second, evidence of the victim's propensity for violence lends support to the defendant's version of the facts where there are conflicting versions of the events. *People v. Lynch* (1984), 104 Ill. 2d 194, 199-200.

The evidence of what occurred here, as is often the case where

self-defense is raised, is incomplete and conflicting. To decide how the events of March 8 really transpired, the jury needed all the available facts, including evidence of the victims' aggressive characteristics, and especially of Howard Bell's violent tendencies. Arlen Bell asserts that this evidence was available. Attached to the defendant's amended motion for a new trial are the affidavits of seven potential witnesses, including Howard Bell's mother, Agnes, Nancy Bell's brother, the pastor at the church Howard and Nancy attended, and the administrator at the nursing home where Agnes Bell resided when the Bells were shot. A review of the affidavits of the seven potential witnesses suggests the following: that Howard and Nancy Bell were known for their violent and sometimes explosive tempers; that Howard and Nancy Bell engaged in heated arguments with one another; that Howard and Nancy Bell were visibly upset when they visited Agnes Bell at the nursing home on the morning of their deaths, and because Nancy was loud and abusive toward Agnes, they were asked to leave the nursing home; that on several occasions the defendant's parents threatened and physically abused Arlen and his younger brother, Kevin; and that Clark did not interview five of the seven potential witnesses. Clark was questioned during the hearing on Bell's motion for a new trial and admitted that he did not speak to several of the potential witnesses. His testimony was somewhat conflicting, however, as he also testified that he at least had contact with six of the seven affiants. In spite of this claimed contact, Clark's testimony did not sufficiently rebut the allegations in the affidavits that he failed to thoroughly interview five of the witnesses about matters pertaining to Arlen Bell's case.

Clark maintained that he did not call any of the potential witnesses because their testimony would have conflicted with Bell's theory of self-defense. The State argues also that counsel's decision was a matter of trial tactics and not reviewable. As a general rule, whether to present certain witnesses is a tactical decision which will not be reviewed and cannot support a claim of ineffective assistance of counsel. (*People v. Greer* (1980), 79 Ill. 2d 103, 121-23.) Counsel's actions in the instant case do not fall neatly within the category of an unreviewable tactical decision, however. Clark admitted that he did not speak to several of the potential witnesses about Arlen Bell's case or the events which preceded the Bells' deaths, and as *Greer* indicated, the failure to interview witnesses may indicate incompetence when trial counsel knows of the witnesses and their testimony may be exonerating. (79 Ill. 2d 103, 123.) Without having thoroughly interviewed all of the potential witnesses about the events leading up to

the Bells' murders, it was impossible for counsel to determine that their testimony would have been worthless or inconsistent with the theory of self-defense.

The failure to adequately interview and call any of these available witnesses was particularly damaging because, as indicated earlier, Arlen Bell was the sole witness for the defense. Had at least a few of these potential witnesses testified at trial, and had their testimony been as their statements now indicate it would have been, much of the testimony would apparently have been admissible, relevant, and supportive of the account of events the defendant gave at trial. Without the benefit of the testimony of any of the potential witnesses, the defendant's testimony stood alone, uncorroborated and in conflict with the testimony of Arlen's younger brother, who did not portray his parents as violent or abusive toward one another.

Bell also claims that Clark was incompetent because he failed to impeach the testimony of Arlen's brother, Kevin Bell, who testified that his parents had a good relationship and that he had never heard them threaten violence against each other or curse or swear at one another. Kevin's testimony created the impression that his parents' interactions were nonviolent and that they were an average married couple. Bell asserts that this impression was damaging to his theory as it made it appear unlikely that Howard Bell killed his wife after an argument and then attacked Arlen in a fit of anger.

The State contends that counsel's failure to call any of the available witnesses previously mentioned to impeach Kevin was an unreviewable matter of trial strategy and did not damage the defendant's case. We disagree. A review of the affidavits of the potential witnesses discussed in the preceding portion of the opinion established that Howard and Nancy Bell were not peaceful, mild-mannered people but were in fact known for their violent characteristics and ill tempers. The affidavits also indicate that Howard and Nancy directed their anger at each other and their two sons with some apparent frequency. Since it appears that Clark did not thoroughly interview all of the potential witnesses about the events leading up to the Bells' deaths, he was unable to make an informed decision on whether to have the witnesses take the stand. Because none of the available witnesses were called to impeach Kevin's testimony and testify regarding their knowledge of Howard and Nancy Bell's abusive behavior and reputations for violence, the defendant's testimony that his father killed his mother and attacked him stood not only alone and unsupported, but in direct conflict with his brother's testimony. Again, the defendant was prejudiced by his trial counsel's inaction.

Bell argues that Clark was also incompetent for failing to file a motion to suppress the confession that he killed both of his parents, and for failing to object to its admission at trial because the confession was involuntary. Although in his appellate brief the defendant argued only that Clark should have moved to suppress the tape-recorded confession, trial counsel's error in failing to move to suppress both the oral confession to Daly and the subsequent recorded statement was so egregious that we will discuss them together.

The defendant was constantly in the presence of the police from approximately 7:30 on the evening of his parents' deaths until after 4 a.m., when he completed his tape-recorded statement. Arlen has a history of psychiatric problems, and the medical reports in the record suggest that he has difficulty dealing with stressful situations in appropriate ways. Thus, he contends that he could not remember exact details of his parents' deaths and confessed to both murders after several hours of persistent questioning by the police when he was emotionally distraught and confused, and only after Lieutenant Daly's repeated suggestions convinced him that he shot both his mother and father.

Clark failed to move to suppress the defendant's confession prior to trial, but allowed Bell to give testimony at trial which was in direct conflict with the confession and further allowed him to argue that the confession to Daly was not voluntary. During examination at the hearing on Bell's motion for a new trial, Clark explained that he did not file a motion to suppress in part because he did not want to put the State on notice as to the portions of the confession he intended to attack at trial. While this may be a sound tactical decision in theory, in fact, Clark did not raise an objection at trial when the State moved to admit the tape-recorded confession or Daly's testimony about the defendant's confession.

■ The defendant's confession was an integral element of the State's case. It was particularly damning to Bell since it was glaringly inconsistent with his testimony at trial. On the witness stand, defense counsel allowed Bell to be backed into a corner, from where he alone had to attempt to convince the jury that the statement he made to Daly, which was later tape-recorded, played for the jury at trial, and transcribed so that it was available to each jury member during the deliberations, was coerced. The Supreme Court in *Jackson v. Denno* (1964), 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, held that as a matter of due process, the issue of the voluntariness of a confession is to be decided by the trial court outside the jury's presence. Arlen Bell was denied this fundamental protection when his appointed counsel

failed to secure the hearing on the admissibility of the confession prior to trial or during trial outside the presence of the jury when the allegation of coercion became evident through the defendant's testimony. Clark failed to utilize procedures available to him to suppress the confession in spite of the fact that he knew that there was a serious question of its voluntariness, which was then argued in front of the jury. Accordingly, the defendant was denied this most basic due process safeguard.

Bell cites as further incompetence on the part of trial counsel his failure to tender a jury instruction for voluntary manslaughter although Bell testified he acted in self-defense and the jury was instructed on the law of self-defense. The supreme court of Illinois has stated that self-defense and voluntary-manslaughter instructions should be given to the jury when any evidence is presented showing the defendant's subjective belief that use of force was necessary. (*People v. Lockett* (1980), 82 Ill. 2d 546, 552.) Thus, had Clark tendered a voluntary-manslaughter instruction, the trial court would have been required to give it because failure of the court to submit a tendered manslaughter instruction in such circumstances has been found to constitute reversible error.

■ The State again contends that Clark's failure to submit the instruction was a tactical decision and therefore not supportive of the defendant's claim that he received ineffective assistance. The State cites several cases which have held that it was not error for trial counsel, as part of his defense strategy, to decide not to submit a manslaughter instruction. In each of the cited cases, there is abundant evidence that the decision not to submit the instruction was indeed part of a defense strategy. In several instances, the defendant himself argued against submitting the manslaughter instruction (*e.g., People v. Spataro* (1978), 67 Ill. App. 3d 69; *People v. Strohl* (1983), 118 Ill. App. 3d 1084), and in one case, the trial judge thoroughly discussed the consequences of the decision with both the defendant and his trial counsel (*People v. Rosas* (1977), 52 Ill. App. 3d 555). In the instant case, there is no evidence that the decision was made by the defendant or that it was a component of any existing trial strategy. Rather, counsel's failure to tender the manslaughter instruction or any other instruction to the court appears to be just another example of his near total failure to act on behalf of his client.

The defendant next argues that Clark was ineffective for failing to object to any of the 133 exhibits offered by the State, including the defendant's tape-recorded statement, a typed transcript of the statement, and nine exhibits containing blood samples which were either

not identified as human blood or as to blood type. As previously discussed, trial counsel should have moved to suppress the tape-recorded statement or objected to its admission at trial. Had the taped statement been suppressed on grounds that it was involuntary, the transcript would likewise have been excluded. Clark could have interposed objections to nine of the exhibits of the blood samples and stains on relevancy grounds. Since the exhibits were not identified either as human blood or as to blood type, they did nothing to prove or disprove that Bell murdered his parents. The failure to object would not alone establish Clark's ineffectiveness, but this instance of inaction must be considered with the other errors committed in the case.

The defendant contends that Clark was incompetent because he failed to offer evidence that the allegations of child abuse Nancy and Howard Bell filed with the Department of Children and Family Services (DCFS) were unfounded. Several times during the trial, the jury was informed that the defendant's parents twice reported to the DCFS that Arlen's son was abused and neglected. Although the record contains documents showing that there was no evidence to support the allegations, the jury was not apprised of this determination. During his tape-recorded statement, Arlen protested that the reports were unfounded, but on appeal he correctly points out that the jury need not have believed his self-serving statement. The repeated mention of the accusations of abuse might have left the jury with the impression that Bell was a documented child abuser and thus more likely to be capable of harming his parents. Clark could have easily corrected any misconceptions the jury might have had, but chose not to do so. Again, while this failure to act may not have demonstrated ineffective assistance of counsel if standing alone, the prejudice it may have caused is more serious in light of counsel's other errors.

Bell's next allegation of incompetence relates to Clark's failure to request a fitness hearing or a court-ordered examination by a psychiatrist selected by the defense. Upon the State's pretrial motion, the trial court ordered Bell to submit to an examination by a psychiatrist selected by the State. The report from the psychiatrist indicated that Bell was not insane at the time the murders took place and he was fit to stand trial.

The test for competence to stand trial is whether the defendant has sufficient present ability to understand the nature and purpose of the proceedings against him and to assist in his defense. (Ill. Rev. Stat. 1985, ch. 38, par. 104—10.) From the record it is clear that Bell understood the proceedings, consulted with his trial attorney, and testified lucidly at trial. Therefore we find that trial counsel's failure

to request a competency hearing did not deny the defendant effective assistance of counsel.

Evidence in the record demonstrates that Bell has a history of psychiatric problems, and medical reports suggest that Bell has been hospitalized as a result of his mental problems. The reports also indicate that Bell's mental problems manifested themselves in the form of seizure disorders and partial paralysis which confined him to a wheelchair for a period of time. We find that under these circumstances, defense counsel should have requested the court to order the defendant to undergo an additional examination so that he could at least have confirmed the results of the first examination, explored the extent of Bell's mental and emotional difficulties, and determined whether and to what extent they influenced his actions on the day his parents were killed. Had Clark obtained the results of an additional examination by a defense-selected psychiatrist, he would have developed his trial strategy based on a more complete understanding of Bell's psychiatric problems. Considering Bell's well-documented psychiatric history, counsel's reliance on the single examination obtained in the instant case further suggests that he failed to zealously represent his client.

■ Bell claims that Clark was ineffective for failing to object to improper questioning by the prosecutor during *voir dire*. We acknowledge the State's contention that Bell waived the issue by failing to raise it in his post-trial motion, but we choose to address it on the merits. The prosecutor questioned a majority of the potential jurors on two points: (1) whether they believed that people have a natural impulse to confess their wrongdoings; and (2) whether they believed a person could plan and carry out a murder of another person, even if that person was a family member, as a solution to problems within the relationship. The sole legitimate purpose of the *voir dire* examination is to assure the selection of an impartial jury. (*People v. Bowel* (1986), 111 Ill. 2d 58.) We agree with the defendant that the disputed questions were improper because they served primarily to indoctrinate the jurors as to the State's theory at trial and asked them to prejudge the facts of the case. Defense counsel clearly had grounds to object to these questions and should have done so to ensure the impartiality of the chosen jurors. We acknowledge that defense counsel might also have asked an improper question of many jurors on *voir dire*, but disagree with the State's assertion that this somehow eliminates the defendant's right to complain of the prosecutor's questions on appeal. We note further that since the trial court has primary responsibility for conducting *voir dire* (87 Ill. 2d R. 234), once it became clear that the prosecutor's examination went beyond a probe for bias

and sought to educate the jury and convert the panel to her beliefs, the court should have denied further questioning on the matter. (*Gasiorowski v. Homer* (1977), 47 Ill. App. 3d 989.) Therefore we find that improper questioning on *voir dire* may have prevented the jury from being completely fair and impartial. This unfortunate circumstance further enhances the need for a new trial.

The defendant urges that Clark was ineffective because he failed to object to the prosecutor's improper remarks during closing arguments. Again, we acknowledge the defendant's failure to address the issue in his post-trial motion, but in view of our disposition in this case, we find it appropriate to address the issue on the merits. One of the complained-of remarks was made when the prosecutor was analyzing Bell's tape-recorded statement and the veracity of that statement. The prosecutor declared, "What we know is people have a human, natural, impulsive desire to tell the truth, to confess when they've done something bad; to tell the honest, true version of what has happened ***." The threshold test to determine whether a comment in closing argument is improper is whether the comment is based upon relevant evidence in the record or legitimate inferences therefrom. (*People v. Wright* (1974), 56 Ill. 2d 523.) The defendant correctly states that this remark lacked any basis in the evidence and should have elicited an objection from defense counsel. This comment was an improper attempt on the part of the prosecuting attorney to add further weight to the defendant's tape-recorded confession and to make it appear to the jury that Bell confessed to both murders because of some innate compulsion to tell the truth.

Bell also complains that the prosecutor improperly stated her personal opinion concerning the truth of the taped statement and argues Clark should have objected. A prosecutor may not interject his personal belief in the veracity of a witness' testimony (*People v. Townsend* (1985), 136 Ill. App. 3d 385), so Bell correctly argues that the remark was improper and should have been objected to. Although failure to object to these improper remarks would not alone constitute ineffective assistance of counsel, it further substantiates our determination that the cumulative effect of counsel's errors mandates reversal and a new trial.

Bell argues that Clark was incompetent because he failed to move for a change of venue even though pretrial publicity was extensive and prejudicial and many of the jurors had some knowledge of the case. Bell attached several articles from local newspapers to support his motion for a new trial. Although many of the articles published before trial consisted of routine factual accounts, two of the articles in-

cluded detailed information about Bell's conflicting statements to the authorities, including his tape-recorded confession. Other articles stated that the evidence indicated that Howard Bell attempted to defend himself with a metal chair before fleeing to the bathroom. These accounts were biased and could have influenced potential jurors, but because the jurors were not asked to provide details of the stories they read or heard, it is impossible now to assess the effect of the media reports. We are therefore unable to determine whether a change of venue should have been granted. To ensure that Arlen Bell received a fair and impartial trial, however, the trial court should have been presented with the opportunity to rule on a motion for a change of venue.

Bell cites as a further example of Clark's incompetence his failure to seek discovery of the names of witnesses interviewed by the DCFS regarding a report of child abuse filed against Nancy Bell. Bell also contends that Clark should have attempted to obtain information about an earlier report of child abuse involving Nancy Bell which was alluded to in a DCFS report. We disagree. A court may gain limited access to DCFS records, but only if they may be necessary for the determination of an issue before the court. (Ill. Rev. Stat. 1985, ch. 23, par. 2061.1(8).) A review of the record discloses that in the earlier of the two reports, Nancy Bell was not the subject of investigation and in the later report, the allegations of abuse were determined to be unfounded. Thus neither information from the earlier report nor the identity of the witnesses named in the second report would have proved necessary for a determination of an issue in the defendant's case.

Based on our review of the totality of John Clark's performance in this case, we conclude that the demonstrated lack of diligence and numerous errors rendered his representation of Arlen Bell incompetent. While the effect of only one of the errors might not have justified this conclusion, we find that the cumulative effect of these errors produced such substantial prejudice to the defendant as to deprive him of a trial with a reliable result. Accordingly, we reverse the judgment and remand the cause for a new trial.

Reversed and remanded.

STOUDER and WOMBACHER, JJ., concur.