**Charles SMITH, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 02S00–8805–PC–489.**

Supreme Court of Indiana.

Dec. 13, 1989.

Opinion on Petition for Rehearing March 7, 1990.

Susan K. Carpenter, Public Defender of Indiana, Teresa D. Harper, Rhonda R. Long–Sharp, Linda R. Torrent, Deputy Public Defenders, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

This is an appeal from the denial of post-conviction relief. A trifurcated jury trial proceeding held in 1983 resulted in the conviction of appellant of Murder and Felony Murder, a jury recommendation to impose the death penalty, and a finding of habitual offender status. The trial court correctly merged the convictions, entered judgment of conviction for Murder, and sentenced appellant to death. We affirmed the trial court on direct appeal. *Smith v. State* (1985), Ind., 475 N.E.2d 1139. Appellant subsequently filed his petition for post-conviction relief, which was heard in the trial court and denied.

Appellant contends the post-conviction court erred in finding he was not denied effective assistance of counsel. We note appellant's burden at the outset:

"To succeed on a claim of ineffectiveness of counsel, appellant must prove that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Appellant also must prove that counsel's failure to function was so prejudicial as to deprive him of a fair trial. A fair trial is denied when the conviction or sentence resulted from a breakdown in the adversarial process that rendered the result unreliable. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To meet his burden, appellant must overcome by strong and con-

vincing evidence a presumption that counsel has prepared and executed his client's defense effectively. *Terry v. State* (1984), Ind., 465 N.E.2d 1085.

Ineffectiveness of counsel revolves around the particular facts of each case. This Court will not speculate about what may have been the most advantageous strategy, and isolated bad tactics or inexperience does not necessarily amount to ineffective assistance. *Mato v. State* (1985), Ind., 478 N.E.2d 57. Nonetheless, perfunctory representation does not satisfy the mandates of the Sixth Amendment. *Magley v. State* (1975), 263 Ind. 618, 335 N.E.2d 811." *Williams v. State* (1987), Ind., 508 N.E.2d 1264, 1266-67. To prevail on appeal, appellant must show that the evidence clearly and unerringly leads to a conclusion that he satisfied the standard quoted above. *Id.*

The State contends that given the availability of this claim on direct appeal, appellant's failure to raise it at that time operates as a waiver of the issue, citing *Johnson v. State* (1986), Ind., 502 N.E.2d 90. While that opinion did hold a post-conviction claim of ineffective trial counsel to have been waived by failure to raise it on direct appeal, its cited authority for that proposition, *Phillips v. State* (1982), Ind., 441 N.E.2d 201, involved a post-conviction action subsequent to a guilty plea and dealt with no waiver issues. *Johnson* itself went on to reach the merits of the ineffective counsel claim, finding no abridgment of that petitioner's Sixth Amendment right to counsel. Similarly, in *Brewer v. State* (1986), Ind., 496 N.E.2d 371, *cert. denied*, 480 U.S. 940, 107 S.Ct. 1591, 94 L.Ed.2d 780, we held that although ineffective assistance of counsel had been raised on direct appeal, the particular argument had not been advanced at that time and thus was waived.

In the case at bar, the post-conviction court chose to reach the merits of appellant's claim in denying his petition, making no findings regarding the State's allegation of waiver. We thus are left on review only with the trial court's ruling on the merits. *Young v. State* (1986), Ind., 500 N.E.2d 735.

In support of his claim, appellant recites several instances of allegedly substandard performance of his trial counsel. He notes first that his trial counsel was privately retained for a flat fee to include expenses and maintained his office in Indianapolis, while the crime occurred, trial was held, and potential witnesses lived in Fort Wayne. Counsel was employed February 5, 1983 but waited until approximately three months before the trial, which occurred in September 1983, to attempt to locate and interview defense witnesses. No State's witnesses were ever interviewed or deposed by appellant's counsel.

Appellant's theory of defense was his alibi that he had been at Eley's Pool Hall at the time of the crime, and that Eggie Lee, one of the participants in the crime, was lying to protect family members. John Eley, the pool hall owner, was not contacted by counsel until the day before trial and was not listed on appellant's pretrial alibi notice. The State objected at trial to Eley's testimony in corroboration of appellant's alibi, and the trial court summarily excluded it due to the violation of the alibi statute, Ind.Code § 35-36-4-1. Had the alibi notice been properly constituted, exclusion of Eley's testimony would have been error. *Wiseheart v. State* (1986), Ind., 491 N.E.2d 985. Counsel did suggest the State could interview Eley, but he did not explicitly request a continuance or make an offer to prove; thus no error was preserved for review. *Id.*

Appellant maintains the prejudice resulting from the exclusion of Eley's testimony was "devastating" to his defense. However, in the absence of any testimony or statement by Eley introduced at the post-conviction hearing, we cannot find the excluded testimony would not have been merely cumulative to that of the five alibi witnesses who did testify at trial that appellant frequently visited Eley's after 5:00 p.m., but were not sure he was there on the evening of the crime. Thus any prejudice resulting here has not been shown to be great enough, standing alone, to satisfy the second prong of the *Strickland* test. *See Marsillett v. State* (1986), Ind., 495 N.E.2d 699.

In most cases, trial errors which do not justify reversal when taken separately do not attain reversible stature when taken together. *Stonebraker v. State* (1987), Ind., 505 N.E.2d 55. In an ineffective assistance of counsel context, however, while each alleged error or omission may be reviewed separately under the substandard performance prong of *Strickland,* we then assess the cumulative prejudice accruing to the accused to see whether the compilation of counsel's errors has rendered the result

unreliable, necessitating reversal under *Strickland's* second prong. *Williams, supra.* We therefore proceed to the other alleged acts or omissions of counsel.

Trial counsel failed to tender, and the trial court failed to read, any jury instructions to the effect that an alibi is an affirmative defense under the law. (Counsel, in fact, tendered no jury instructions whatsoever during any phase of appellant's trifurcated proceeding.) Appellant maintains the absence of an alibi instruction rendered unreliable the jury's determination of guilt because the instructions given purported to be all-inclusive; the jury thus could have inferred from the absence of any mention of alibi in their charge that the trial court considered appellant's defense to be of no significance.

A defendant is entitled to an instruction on any defense which has some foundation in the evidence. *Thomas v. State* (1987), Ind., 510 N.E.2d 651. Counsel here should have tendered an instruction on alibi defense.

Appellant argues counsel was ineffective in failing to properly prepare and conduct impeachment of the State's key witness, Eggie Lee. Counsel had access to prior statements given by Lee to police as well as other investigative reports, but never interviewed him before trial. Lee's trial testimony portrayed appellant in a far more brutal light than any of his prior statements, and was in this regard, and others, inconsistent with them.

Evidence submitted at the post-conviction hearing shows inconsistencies in Lee's testimony as to how and when the gun was acquired. He had stated it was in appellant's possession at the time. However, Briddie Johnson, another participant in the crime, testified at the hearing on his guilty plea (later rescinded) six months prior to appellant's trial that the handgun used to kill Carmen Zink had been obtained by Eggie Lee in a purse-snatching incident a few weeks prior to the murder and had remained in Lee's possession until handed to appellant in the Elegant Farmer parking lot. However, none of the foregoing was used by counsel to impeach Lee's testimony at trial although the State had furnished him with a copy of Johnson's statement before trial.

Briddie Johnson was also Eggie Lee's brother-in-law. Counsel introduced at trial the testimony of Wayne Evans, a fellow jail inmate of Johnson, to the effect that Evans overheard Johnson admit to a plan to set up appellant as the triggerman.

Counsel then introduced the testimony of Darnell Tinker, also an inmate at the Allen County Jail, to the effect he had been questioned by detectives trying to locate the murder weapon. Prior to trial, Tinker had told counsel that as an inmate he had heard Eggie Lee say that he was not taking the murder for anyone, that Briddie was his sister's husband, that Briddie meant more to him than did appellant, and that appellant was going to get the murder for that reason; Lee went on to say that Briddie had the gun, but nevertheless, Briddie was family. Counsel told Tinker that Lee's statement was hearsay, thus inadmissible, and never questioned Tinker about it at trial. However, as the State's key witness, Lee was clearly available to testify at trial; thus any of his prior statements were admissible under the rule established in *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482.

Trial counsel utilized none of the foregoing specific information to attempt to impeach Lee's testimony with prior inconsistent statements. The State, however, presumably in anticipation of such an attempt, questioned Lee on direct examination so as to reconcile some relatively innocuous conflicts in the five statements given prior to trial concerning, *e.g.*, his denial of any involvement in the crime when initially questioned by police. On cross-examination of Lee, counsel for appellant rehashed the conflicts already brought out by the State, and then pressed Lee with, "How can we be sure [that you are telling the truth now]. You've lied so many times?" To which Lee replied, "Well, I took a polygraph saying that I told the truth." Counsel then continued questioning Lee, making no motion for mistrial, to strike, or to admonish the jury to disregard the polygraph remark. The State later underscored the reference to Lee's polygraph in both its final and rebuttal arguments concluding the guilt phase of the trial.

Because of their inherent unreliability combined with their likelihood of unduly influencing a jury's decision, references by witnesses or counsel to polygraph test results are inadmissible absent waiver or stipulation of the parties. *Pavone v. State* (1980), 273 Ind. 162, 402 N.E.2d 976. Motions in limine are appropriate with respect to such references. *Id.* Where a

trial hinges on a question of credibility, it is reversible error to deny a motion for mistrial after a damaging reference to polygraph results. *Baker v. State* (1987), Ind., 506 N.E.2d 817. Here, where appellant's counsel had access to Lee's polygraph results prior to trial, his failure to move in limine to exclude any references thereto, or to move at trial to prevent further reference, at least, clearly falls below the standard of reasonably competent counsel. In fact, he invited the answer by the form of his question.

Appellant's trial counsel knew that the State would rely heavily on Eggie Lee's testimony; counsel testified at the post-conviction hearing that his goal at trial thus was "to completely decimate" Lee's testimony. At the close of the State's evidence, counsel moved the court to strike Lee's testimony in its entirety "by reason of some notes I have here from a seminar I recently attended." When pressed by the court to state some authority, counsel began explaining the tacit admission "rule" (hearsay exception). When the court correctly observed, "That doesn't have any applicability here," counsel promised to research his authority and provide case citation the following day, and the court denied the motion to strike.

■ Counsel renewed it the following day, still absent any authority, and moved as well "for a directed verdict of acquittal on the basis that assuming the court might have erred in my motion earlier to strike Mr. Lee's testimony...." This frivolous attempt to strike such damaging testimony helps illustrate that the lack of preparation undertaken to contradict or impeach Lee's testimony constitutes representation falling below the prevailing norm for reasonably competent counsel.

After the jury returned its guilty verdict, the court reconvened the following day for the penalty phase of the trial. The State requested the death penalty based upon the statutory aggravating factor of the intentional killing in the course of robbing the victim. The State presented no additional evidence but moved to incorporate the evidence from the guilt phase. The motion was granted. Appellant's counsel introduced no evidence of mitigating factors. While Eggie Lee's trial testimony served as evidence of the State's intentional-killing aggravator, appellant's counsel's omission was not a matter of strategy but resulted from a complete lack of preparation for the penalty phase. As counsel testified at the post-conviction hearing, his unpreparedness came about "because, quite frankly, the jury verdict came as a complete shock to me. I had thought that the jury verdict would have been just the opposite of what it was."

■ A decision by defense counsel not to present evidence can be deemed reasonable only if it is "predicated on a proper investigation of the alleged defense." *Thomas v. State* (1969), 251 Ind. 546, 554, 242 N.E.2d 919, 924. Nevertheless, the post-conviction court failed to find this lack of preparation of evidence in mitigation to constitute ineffective assistance. The court did observe "there was no evidence to establish a statutory mitigating factor."

■ However, the statute, Ind.Code § 35–50–2–9(c), at the time of trial specified six factors which might be considered in mitigation, and in subsection 7 allowed for consideration of "[a]ny other circumstances appropriate for consideration." To avoid capricious imposition of the ultimate penalty, under federal constitutional jurisprudence aggravating factors must be circumscribed so as to narrow the class of offenders eligible for the death penalty. *Gregg v. Georgia* (1976), 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859.

However,

" '[T]he Constitution limits a State's ability to narrow a sentencer's discretion to consider relevant evidence that might cause it to *decline to impose* the death sentence.' [Citation omitted.] (Emphasis in original.) Indeed, it is precisely because the punishment should be directly related to the personal culpability of the defendant that the jury must be allowed to consider and give effect to mitigating evidence relevant to a defendant's character or record or the circumstances of the offense. Rather than creating the risk of an unguided emotional response, full consideration of evidence that mitigates against the death penalty is essential if the jury is to give a 'reasoned *moral* response to the defendant's background, character, and crime.' [Citations omitted.] In order to ensure 'reliability in the determination that death is the appropriate punishment in a specific case,' [citation omitted,] the jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background, character, or the circumstances of the crime." *Penry v. Ly-*

*naugh* (1989), 492 U.S. ——, ——, 109 S.Ct. 2934, 2951, 106 L.Ed.2d 256, 284. *See also Eddings v. Oklahoma* (1982), 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1.

Our statute requires the finder of fact to determine "that any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances," Ind.Code § 35–50–2–9(e), (g), before arriving at a sentence of death. In the absence of any evidence of mitigating circumstances, which as discussed above may include virtually anything favorable to the accused, or of evidence to rebut the existence of the charged aggravating factors, a death sentence is a foregone conclusion.

The facts in the case at bar parallel those in *Blake v. Kemp* (11th Cir.1985), 758 F.2d 523, *cert. denied,* 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367, where the petitioner's trial counsel was so certain of obtaining a verdict of not guilty by reason of insanity that he totally failed to investigate and prepare for the sentencing phase of the murder trial. Noting that character witnesses testified for Blake at his *habeas corpus* hearing and thus had been available had trial counsel sought them, the reviewing court concluded such evidence "might have demonstrated to the jury that the petitioner was not the totally reprehensible person they apparently determined him to be. Certainly they would have provided some counterweight to the evidence of bad character which was in fact received." *Id.* at 535. So it was with the instant case, where nine witnesses gave narrative testimony at the post-conviction hearing in regard to appellant's positive character traits, including sincerity, helpfulness, kindliness, respectfulness, and general unselfishness, yet in his penalty phase argument to the jury the prosecutor was able to state, "There are no mitigating circumstances, period. There are no mitigating circumstances in evidence."

The *Blake* court went on to find that Blake essentially had received no defense at all in the penalty phase, and that his trial counsel's unpreparedness unconstitutionally prejudiced him to the same degree as if the trial court had not permitted him to introduce any mitigating evidence. Addressing the second prong of the *Strickland* test, the court found that "the probability that Blake would have received a lesser sentence but for his counsel's error is sufficient to undermine our confidence in the outcome." *Id.* at 535. The court then

affirmed the lower court's reversal of Blake's death sentence.

▮ We similarly find that appellant's counsel's failure to prepare for the penalty phase in the case at bar undermines our confidence in appellant's death sentence such that trial counsel's ineffective assistance at the penalty phase alone warrants reversal of appellant's death sentence. Moreover, counsel's compilation of errors in the guilt phase as set forth above rendered appellant's defense so anemic that our confidence in the guilty verdict itself is undermined so as to require reversal of appellant's conviction as well.

The ruling of the post-conviction court is reversed. This cause is remanded for a new trial.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.

## ON PETITION FOR REHEARING

GIVAN, Justice.

Appellant was convicted of Murder and Felony Murder. The jury recommended the death penalty and additionally found him to be a habitual offender. The trial court sentenced appellant to death. No sentence was pronounced on the habitual offender status. We affirmed the judgment of the trial court upon direct appeal. *Smith v. State* (1985), Ind., 475 N.E.2d 1139.

Appellant subsequently filed a petition for post-conviction relief, which was denied by the trial court. Upon direct appeal from that denial, we found that his original trial counsel had rendered him ineffective assistance. Accordingly, we vacated his death sentence, reversed his conviction and remanded for a new trial. *Smith v. State* (1989), Ind., 547 N.E.2d 817. Both appellant and the State have filed petitions for rehearing.

In its petition, the State contends we erred in finding that appellant's trial counsel's performance was so deficient as to undermine our confidence in the trial's outcome. The State merely reargues the matters covered in our original opinion. The State's petition is denied.

In his petition, appellant contends we neglected to address his issue of insufficiency of the evidence to support the finding of his status as a habitual offender. He further maintains that because the evidence was insufficient as a matter of law, he cannot be retried upon the habitual of-

fender count. An examination of the trial record reveals that during appellant's testimony at the guilt phase of his trial, his two prior convictions for burglary were brought out in the course of his direct and cross-examination. This testimony subsequently was incorporated into the evidence introduced at the habitual phase of the trifurcated proceeding.

Also during the habitual phase, State's Exhibits Nos. 13 and 14 were introduced to document appellant's prior felony convictions, apparently the same two burglary convictions mentioned during his trial testimony. Exhibit No. 13 consisted of an entry of judgment and a sentencing order in Cause No. CCR–75–88, wherein appellant was convicted on November 3, 1976 of burglary and sentenced on November 29, 1976 to one (1) to ten (10) years. Exhibit No. 14 documented his conviction on April 21, 1977 of burglary in Cause No. CCR–76–179 and his sentence of ten (10) to twenty (20) years rendered on May 16, 1977.

Appellant argues that because no evidence was adduced to show the dates of commission of the prior felonies, the second burglary was not proved to have been committed after the sentencing on the first conviction as required by Ind.Code § 35–50–2–8(b); and thus they were insufficient as a matter of law to sustain his habitual offender finding. He is correct in this regard.

A finding of habitual offender status, absent proof of the commission dates of the prior felonies, constitutes fundamental error and must be reversed. *Steelman v. State* (1985), Ind., 486 N.E.2d 523. Even in a habitual offender proceeding, if reversal is due to evidentiary insufficiency as opposed to "trial error," retrial is barred due to double jeopardy considerations. *Phillips v. State* (1989), Ind., 541 N.E.2d 925. Therefore, on remand in the instant case, while appellant may be retried on the murder, robbery and felony-murder charges, he may not again be subjected to a habitual offender determination upon these same charges.

The State's petition for rehearing is denied; appellant's petition for rehearing is granted; and this cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

SHEPARD, C.J., DeBRULER and DICKSON, JJ., concur.

PIVARNIK, J., not participating.