**David SARWACINSKI, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 45A04–8912–CR–589.**

Court of Appeals of Indiana,
Third District.

Jan. 7, 1991.

James F. Stanton, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

Defendant-appellant David Sarwacinski appeals his conviction for murder. IND. CODE § 35–42–1–1 (1988 Ed.).

The facts favorable to the judgment show that on January 21, 1989, the victim, Robert Eisenhutt, was visiting his girlfriend, appellant's step-daughter, at appellant's home in Hammond, Indiana. Sometime after 11:00 P.M., appellant arrived home from work and began to drink and talk with Eisenhutt. A few hours later, Eisenhutt, who was holding his girlfriend's five-month-old baby, started crying due to the crib death of his own daughter a few months earlier. Appellant attempted to console Eisenhutt, but when his attempt failed, he asked Eisenhutt to leave. Eisenhutt stated that he wanted to talk to his girlfriend, and appellant reached for his gun. Two women in the household attempted to escort Eisenhutt out of the house, but he stumbled his way back inside. After ordering one of the women to call the police, appellant shot Eisenhutt in the shoulder and chest. When Eisenhutt subsequently exited the house, appellant followed him outside and shot him in the arm. Eisenhutt died from the loss of blood due to his multiple gunshot wounds.

Appellant raises four issues for review which this Court restates as three:

(1) whether the trial court erred in failing to *sua sponte* instruct the jury on the lesser-included offense of voluntary manslaughter;

(2) whether trial counsel was ineffective in failing to tender an instruction on voluntary manslaughter to the trial court; and

(3) whether the evidence was insufficient to overcome appellant's claim of self-defense and to sustain his conviction for murder.

■ Appellant claims the trial court erred in failing to instruct the jury on the lesser-included offense of voluntary man-

slaughter. Although appellant did not tender such an instruction to the trial court, he argues that the court's failure to instruct the jury on its own motion constitutes fundamental error. However, our Supreme Court has addressed this issue and found that failure to give instructions on lesser-included offenses does not constitute fundamental error. *Metcalf v. State* (1983), Ind., 451 N.E.2d 321, 326.

■ Next, appellant maintains trial counsel was ineffective in failing to tender an instruction on voluntary manslaughter to the trial court. It is well settled that judicial scrutiny of counsel's performance is highly deferential. The standard for counsel's performance is reasonably effective assistance. To prevail on a claim of ineffectiveness, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) the reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

*Strickland v. Washington* (1984), 466 U.S. 668, 687–694, 104 S.Ct. 2052, 2064–2068, 80 L.Ed.2d 674; *Mftari v. State* (1989), Ind., 537 N.E.2d 469, 473.

This Court will not speculate as to what may have been counsel's most advantageous strategy, and isolated poor strategy, bad tactics, or inexperience does not necessarily amount to ineffective assistance.

*Strickland* 466 U.S. at 689–691, 104 S.Ct. at 2065–2066.

*Mftari* at 473.

It is apparent from the record that appellant's trial counsel decided to rely solely on the defense of self-defense. If counsel had submitted an instruction on voluntary manslaughter, he would have weakened the self-defense case and diminished appellant's chances of acquittal. This Court finds no reason to second-guess the strategic decision of counsel.[1]

---

1. In response to footnote 2 of the dissent, this Court would note that requiring attorneys to make a record of their strategy discussions with their clients would be highly impractical. Moreover, even if the record were made outside the presence of the jury, such a requirement might, in fact, compromise the attorney-client relationship by revealing privileged communications to the trial court as well as opposing counsel.

■ Finally, appellant claims the evidence was insufficient to overcome his claim of self-defense and to sustain his murder conviction.[2] When reviewing a claim of insufficient evidence, this Court neither reweighs the evidence nor rejudges the credibility of witnesses. Rather, it looks only to the evidence favorable to the judgment and any reasonable inferences therefrom. If there was sufficient evidence of probative value to support a finding of guilt beyond a reasonable doubt, this Court will affirm the conviction. *Madison v. State* (1989), Ind., 534 N.E.2d 702, 703.

To prevail on a claim of self-defense, a defendant must show: (1) that he was in a place where he had a right to be; (2) that he acted without fault; and (3) that he had a reasonable fear or apprehension of death or great bodily harm. *Id.* Once the defendant has asserted his self-defense claim, the State bears the burden of proving beyond a reasonable doubt the absence of one of the above-mentioned factors. *Id.* at 704. Whether the State has disproved a claim of self-defense is a question of fact for the jury, and when the evidence is conflicting, the jury may accept or reject the claim of self-defense. *Id.*

Here, the evidence was conflicting as to whether appellant acted without fault and whether he had a reasonable fear or apprehension of death or great bodily harm. Consequently, it was reasonable for the jury to reject appellant's claim of self-defense. *Id.* Because this Court will not reweigh the evidence or rejudge the credibility of witnesses, the judgment of the trial court is affirmed.

Affirmed.

CHEZEM, J., concurs.

MILLER, P.J., dissents with opinion.

MILLER, Presiding Judge, dissenting.

I respectfully dissent.

In this appeal, David Sarwacinski, who was charged and convicted of murder, claims his counsel was inadequate because counsel failed to submit a jury instruction on voluntary manslaughter—thus depriving the jury of the option of finding him guilty of the lesser, voluntary manslaughter offense. His counsel's strategy was apparently based on the existence of a meritorious self-defense claim based on the fact that Sarwacinski was defending his home and family against a much larger and younger, drunken man who refused to leave the premises.[1] Counsel apparently believed that if the jury were given only two choices, murder or acquittal, they would opt for the acquittal.

Sarwacinski points out that there was substantial evidence that his actions in defending his home and family would have established the "sudden heat" element of voluntary manslaughter—a partial defense. *Palmer v. State* (1981), Ind., 425 N.E.2d 640. The result of the failure to instruct the jury on voluntary manslaughter was that the jury retired to deliberate not knowing that there was a lesser offense and, thus, did not know there was an option between guilty of murder and not guilty. Here, counsel's failure to give the jury an option resulted in a much more serious sentence. The judge sentenced Sarwacinski to thirty years imprisonment, the minimum sentence for murder (IC 35–50–2–1), finding several mitigating factors. The presumptive sentence for voluntary manslaughter, a Class A felony when committed by means of a deadly weapon (IC 35–42–1–3), is thirty years (IC 35–50–2–5); however, the minimum sentence is twenty years (IC 35–50–2–1).

Under the facts of this case, I agree with Sarwacinski that his trial counsel adopted a strategy *without providing a record that*

---

2. Appellant also argues that there was insufficient evidence to show the malice necessary to sustain his murder conviction; however, the crime of murder no longer embodies the element of malice. *McCann v. State* (1984), Ind., 466 N.E.2d 421, 424.

1. Eisenhutt was described as approximately 6'1" tall, 200 pounds, age 23. The autopsy revealed a blood alcohol content of .18. Sarwacinski, age 40, was 5'5 ½" tall, 122 pounds. He had a heart condition for which he took nitroglycerin and eye problems which left him with poor depth perception and had no criminal record.

*Sarwacinski was consulted and agreed with the strategy* and this deficiency of counsel entitles Sarwacinski to a new trial.

Whether there has been either adequate provocation, or a killing in a sudden heat of passion are questions for the jury. *Harrington v. State* (1987), Ind., 516 N.E.2d 65; *Ronk v. State* (1984), Ind., 470 N.E.2d 1337; *Estes v. State* (1983), Ind., 451 N.E.2d 313; *Pinegar v. State* (1990), Ind. App., 553 N.E.2d 463. As our supreme court explained in *Palmer, supra:*

> "The voluntary manslaughter statute creates an affirmative defense of sudden heat akin to self-defense. The latter is, if successful, a complete defense while the defense of sudden heat is only a partial defense because it reduces the seriousness of the crime.... It is akin to self-defense in that its introduction into the case (either through the State's own evidence or through the defendant's evidence or both) places a burden upon the state to negate the defense beyond a reasonable doubt *and calls for an instruction on the lesser included offense of voluntary manslaughter.*" (emphasis added).

425 N.E.2d at 644.

A defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater. *Keeble v. United States,* (1973), 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844; *Pinegar, supra* 553 N.E.2d at 528.

In both murder and voluntary manslaughter, "the State must prove to a moral certainty beyond a reasonable doubt that the accused knowingly or intentionally killed a human being." *Reinbold v. State* (1990), Ind., 555 N.E.2d 463, 466. The distinction between murder and voluntary manslaughter is the presence or absence of sudden heat which is a mitigating factor provided by IC 35–42–1–3, *Id.* In *Reinbold,* our supreme court explained that the voluntary manslaughter statute provides the State "the option to charge a lesser offense against one who has knowingly or intentionally killed, but whose culpability

appears not to warrant prosecution for murder, and it provides an accused the opportunity to escape conviction for what would otherwise be murder upon a showing that he acted in sudden heat." *Id.* at 467. The court also observed that "a murder charge cannot be drafted so as to preclude the possibility of a conviction for voluntary manslaughter upon the introduction of evidence that the defendant acted in sudden heat ..." *Id.* (See also *Pinegar, supra,* reversing defendant's conviction for murder where voluntary manslaughter instruction was requested, but refused by the trial court.)

At common law, the jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged. *Beck v. Alabama* (1980), 447 U.S. 625, 633, 100 S.Ct. 2382, 2387, 65 L.Ed.2d 392 (a capital offense case). The Supreme Court explained in *Beck* that the rule developed as an aid to the prosecution in cases where the proof failed to establish some element of the crime charged. *Id.* But the rule is also beneficial to the defendant in that it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal. *Id. Beck* quoted from Justice Brennan's opinion in *Keeble, supra,* wherein it was stated that giving the jury the third option of convicting on a lesser included offense enables the jury to accord the defendant the full benefit of the reasonable doubt standard. Justice Brennan stated:

> "Moreover, it is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defen-

dant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction."

412 U.S. at 212–213, 93 S.Ct. at 1997–1998.

*Keeble* involved an Indian who was convicted of assault with intent to commit serious bodily injury, a federal crime under the Major Crimes Act of 1885 when committed on an Indian reservation. The defense counsel, unlike here, requested an instruction on a lesser offense, but it was refused. However, Justice Brennan's comments are equally applicable to the situation wherein the defendant is denied the jury's consideration of the lesser offense due to trial counsel's failure to offer such an instruction. The defense of sudden heat should be presented to the jury where, as here, "an accused is actually provoked and in the sudden heat of passion exceeds the permissive bounds of self-defense and kills someone." *Pinegar, supra,* at 528.

In *Dickens v. State* (1973), 260 Ind. 284, 295 N.E.2d 613, our supreme court explained what is meant by heat of passion, as follows:

"Passion, of course, takes many forms. The most important characteristic of a truly impassioned mind is its inability to function rationally. Webster's Third New International Dictionary (unabridged) defines 'passion' as 'the state of being subjected to or acted on by what is external or foreign to one's true nature; a state of desire or emotion that represents the influence of what is external and opposes thought and reason as the true activity of the human mind.' Rage and sudden resentment are the states of mind most often associated with manslaughter. However, fear is clearly a reason-obscuring state of mind and courts have held that fear, adequately provoked, will reduce murder to manslaughter.

'[A]ll that is required to reduce a homicide from murder to voluntary manslaughter is sufficient provocation to excite in the mind of the defendant such emotions as either anger, rage, sudden resentment, or terror as may be sufficient to obscure the reason of an ordinary man, and to prevent deliberation and premeditation, to exclude malice, and to render the defendant incapable of cool reflection.'

*State v. Plummer* (1940), 44 N.M. 614, 107 P.2d 319. See also: *Com. v. Flax* (1938), 331 Pa. 145, 200 A. 632; *Kinard v. United States* (1938), 68 App.D.C. 250, 96 F.2d 522."

*Id.* 295 N.E.2d at 618–619.

In the present case, the witnesses testified that, only moments before the shooting, Sarwacinski tried to console Eisenhutt. Sarwacinski witnessed Eisenhutt handling his step-grandchild in a manner which could have endangered the child and, when two women in the household attempted to escort him out of the home, Sarwacinski's wife fell. Sarwacinski testified that he thought Eisenhutt pushed his wife. After a call for help was made to 911 and Eisenhutt continued to ignore Sarwacinski's requests to leave, Sarwacinski pulled out his gun and shot Eisenhutt. The judge's own comments in the sentencing indicate that the judge considered "that there were grounds tending to excuse or justify the crime"; "the defendant acted under strong provocation" and "the victim of the crime either induced or facilitated the offense." (R.47). These comments by the judge indicate that had the defense counsel requested an instruction on voluntary manslaughter, the trial court would have been required to give it. *Pinegar, supra.*

The majority opines, without citation to authority, that "[i]f counsel had submitted an instruction on voluntary manslaughter, he would have weakened the self-defense case and diminished appellant's chances of acquittal." p. 951. I first observe that this court rejected the argument that by claiming self-defense a defendant is not entitled to a manslaughter instruction. *Pinegar, supra,* at 528. A claim of self-defense is not inherently inconsistent with a killing in sudden heat. *Id.* Furthermore, when the trial court instructs the jury on the law necessary to decide the case, the court does not separately identify which instructions have been submitted by the defendant, by the State, or by the court;

thus, the giving of the instruction would not necessarily weaken the defendant's claim of self-defense.

In *Hiner v. State* (1990), Ind.App., 557 N.E.2d 1090, this court reversed and remanded for a new trial on the basis of ineffective assistance of counsel. Although there were several instances of the defense counsel's incompetence—the failure of the trial counsel to offer an instruction concerning a lesser included offense was found to be error. This court found that the trial counsel's actions "pinned all hope of a successful outcome on one roll of the dice ... and lost." *Id.* at 1093. See also *Smith v. State* (1990), Ind., 547 N.E.2d 817, where the trial counsel failed to tender, and the trial court failed to read, any jury instruction to the effect that an alibi is an affirmative defense. Smith maintained that the absence of an alibi instruction rendered unreliable the jury's determination of guilt because the jury might infer that the absence of the instruction indicated his defense was not significant. Our supreme court, in reversing because of ineffective assistance of counsel, held that the trial counsel should have tendered an instruction on alibi defense and stated, "[a] defendant is entitled to an instruction on any defense which has some foundation in the evidence." *Id.* at 820. Here, like *Smith* and *Hiner*, the jury was not aware there was an alternative to a finding of murder or of not guilty.

In both *Hiner* and *Smith,* the trial counsel's conduct was found deficient in several respects. Here there is only one claimed error—the failure to request an instruction. Nevertheless, the failure to request a voluntary manslaughter instruction was a decision which significantly prejudiced Sarwacinski's defense. As in *Hiner* and *Smith,* the evidence here was conflicting. However, it indicated that Sarwacinski was frustrated and angered by Eisenhutt's refusal to leave his home. While the evidence may not have convinced the jury that he acted in self-defense, they could have determined that he acted in sudden heat—with a lesser culpability than murder. The probability that Sarwacinski would have received a lesser sentence "but for his trial counsel's error is sufficient to undermine our confidence in the outcome." *Smith, supra,* at 822, quoting *Blake v. Kemp* (11th Cir.1985), 758 F.2d 523, *cert. denied,* 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367.

I recognize that, if this court were to hold that a defendant is entitled to a new trial when the defense counsel fails to tender lesser included offense instructions, we would be giving approval to an additional trial strategy wherein the defendant could pin all his hopes on one roll of the dice, but could never lose. If the jury acquits—the defendant wins. If the jury finds the defendant guilty, he appeals claiming ineffective assistance of counsel—we reverse and, again, the defendant wins.

Undoubtedly, it may be an appropriate strategy for the trial counsel to submit to the jury only the option of acquittal or conviction in a murder case. However, like the decision to plead guilty, the decision is not simply a matter of strategy, but is a decision which affects the substantial rights of the defendant and should be adopted only where the counsel has made the decision *in consultation with the defendant.*

Our Rules of Professional Conduct require that a lawyer is to abide by the client's decision concerning the objectives of representation, and must consult with the client as to the means by which they are to be pursued. Ind. Professional Conduct Rule 1.2. A lawyer is also required to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. Prof.Cond.R. 1.4. The comments to Rule 1.4 state that: "In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that might injure or coerce others."

In *People v. Bell* (1987), 152 Ill.App.3d 1007, 106 Ill.Dec. 59, 505 N.E.2d 365, the appellate court found that failure to submit a lesser included offense instruction could support a claim of ineffective assistance when there is no evidence that the decision was made by the defendant or that it was a

component of any existing trial strategy. *Id.* 106 Ill.Dec. at 65, 505 N.E.2d at 371. I find the reasoning of the Illinois court persuasive and believe that—in *murder* cases where the evidence introduced by either the State or the defendant warrants an instruction on voluntary manslaughter—it is reversible error, based on ineffective assistance of counsel, for the trial counsel to fail to offer the instruction unless the record indicates that the trial counsel discussed this strategy with his client and the client assented to it. Here there is no indication in the record that Sarwacinski was involved in this decision.[2] I would remand for a new trial.

**2.** A record could be made—without compromising the attorney/client confidentiality requirement—outside the presence of a jury much like a record is made whenever a guilty plea is entered by a defendant. An example of such a record was mentioned in *Zeilinga v. State* (1990), Ind., 555 N.E.2d 471. In *Zeilinga,* the defendant claimed he was deprived of effective assistance of counsel because his attorney failed to present an alibi defense. In the pretrial hearing, Zeilinga's counsel brought to the attention of the court that Zeilinga had urged him to present an alibi defense. Counsel made a record indicating the steps he had taken to establish the alibi defense and explaining that he had been unable to do so.