# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Clark*, 2011 IL App (2d) 100188

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIECISSIES CLARK, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-0188 |
| Filed | September 15, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings following defendant's negotiated guilty plea to the attempted murder of his girlfriend, the second-stage dismissal of defendant's postconviction petition alleging that his trial counsel was ineffective in failing to investigate an insanity defense was reversed and the cause was remanded for further proceedings where the victim was willing to testify that defendant was a schizophrenic and was not taking his medication at the time of the offense, but defendant's counsel failed to contact her. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 06-CF-2422; the Hon. T. Jordan Gallagher, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Thomas A. Lilien and Christopher McCoy, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE BOWMAN delivered the judgment of the court, with opinion.

Justices Hutchinson and Zenoff concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant, Tiecissies Clark, appeals the trial court's second-stage dismissal of his petition filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)) in connection with his guilty plea to attempted murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2006)). He contends that he made a substantial showing that his attorney was ineffective for failing to contact the victim, who was willing to testify in support of an insanity defense. He argues that, had he known that the victim was willing to testify, he would not have pleaded guilty and would have proceeded to trial asserting the defense. We reverse and remand for a third-stage evidentiary hearing.

¶ 2                              I. BACKGROUND

¶ 3    Clark was charged with multiple offenses on September 21, 2006, in connection with the stabbing of Clark's girlfriend, Akela Dillon. Dillon subsequently obtained an order of protection against Clark.

¶ 4    In October 2006, the trial court ordered a fitness evaluation at the request of Clark's then public defender, Kiran Vasireddy. However, on November 21, 2006, Clark was represented by a new public defender, Beth Peccarelli, who withdrew the fitness issue, telling the court that she did not have a *bona fide* doubt as to Clark's fitness. On December 14, 2006, Peccarelli told the court that she spoke to the psychologist who had completed Clark's fitness evaluation. She said that she had not seen the written report but that, "apparently, fitness should no longer be an issue at this point."

¶ 5    On January 10, 2007, Clark entered a negotiated plea to attempted murder in exchange for a 12-year sentence of incarceration and dismissal of the other charges. The factual basis for the plea provided that, on the day of the incident, Clark and Dillon had been dating for eight months. On that day, Clark stabbed Dillon nine times while they were in an apartment, and she ran from the building into the street, where officers arrived and took her to the

hospital. The prosecutor stated that, if called to testify, Dillon would say that she was aware that Clark was a diagnosed schizophrenic who was off of his medications at the time of the offense.

¶ 6     The court asked Clark if he understood the sentence and the agreement, and it asked three times whether the plea was "voluntary." Clark answered "yes." The court also admonished Clark about the rights he was giving up and his appeal rights. It did not inquire whether Clark was taking medication, inquire about discussions with his attorney, or ask him directly about his mental health. After the factual basis was heard, the court asked: "And certainly fitness is not an issue in this case?" Peccarelli answered "no." A previous conviction in Florida was mentioned but details were not provided. The sentencing order was filed that same day.

¶ 7     On January 24, 2007, the prosecutor submitted a document entitled "Attorney's Statement," which stated that "Defendant, while listening to his schizophrenic voices, stabbed [Dillon] nine times ***. Defendant is severely mentally ill and was off his meds." The document also stated that Clark previously committed a similar crime in Florida.

¶ 8     In April 2008, Clark filed a *pro se* postconviction petition, verified by a properly notarized affidavit, alleging that his counsel was ineffective because she coerced him to plead guilty under the false impression that there were no witnesses available to testify on his behalf. He alleged that Dillon was willing to testify that he was not in his correct mental state when the incident occurred. He further alleged that Dillon made several attempts to contact Peccarelli in order to testify, but Pecarelli did not contact Dillon.

¶ 9     Clark attached to the petition a notarized affidavit from Dillon, who averred that, at the time of the incident, Clark was not taking his medications and "was hearing voices which he said told him to stab me." She further averred that, while Clark was in custody, she remained in contact with him through phone calls and letters and told him that she would testify on his behalf, "because I know he didn't mean to harm me, but it was his mental health condition that prompted him to do what he did." She averred that she tried to contact Peccarelli several times, but her calls were not returned, and that Peccarelli had Clark plead guilty under the belief that no witnesses were available, which was "false and misleading information to rely on in making his decision to plead guilty." Also attached to the petition were documents showing deposits that Dillon made into Clark's inmate trust fund between September 2007 and February 2008.

¶ 10    The trial court appointed an attorney to represent Clark. On May 20, 2009, counsel filed a motion to withdraw the plea, alleging that Clark was unfit to plead guilty. On June 2, 2009, counsel filed an amended postconviction petition, again alleging that Clark was not fit to plead guilty, alleging that the fitness evaluation had never actually been scheduled or completed once the fitness issue was withdrawn, and stating that the fitness issue should never have been withdrawn. Also included were the allegations that Clark had always maintained to his trial counsel that he suffered from mental health issues, which were "an underlying cause of the incident," and that he pleaded guilty because of undue pressure and a minimal understanding of the events occurring around him. Attached to the petition was a document dated December 5, 2006, from the psychologist assigned to Clark's case, asking for a six-week continuance to complete Clark's fitness evaluation.

¶ 11    The State moved to dismiss, contending that there was no substantial showing of a constitutional violation. The State argued that Clark failed to provide affidavits from mental health practitioners in support of his fitness allegations. The State also argued that Dillon's affidavit was unreliable and insufficient to support Clark's claims and that any decision not to call her as a witness was trial strategy.

¶ 12    At the hearing on the motion, Clark's counsel withdrew the motion to withdraw the plea and made no argument on the postconviction petition, other than to ask the court to "see past perhaps some of the rules and regulations of this state." The court dismissed the petition, and Clark appeals.

¶ 13                                    II. ANALYSIS

¶ 14    Clark argues that he made a substantial showing of ineffective assistance of counsel because Peccarelli failed to investigate an insanity defense and did not contact Dillon, who was willing to testify in support of such a defense. He argues that he was prejudiced by Peccarelli's failure because, had he known of the potential defense, he would not have pleaded guilty and would have proceeded to trial on that defense. Clark further argues that, to the extent his postconviction counsel failed to preserve the issue in the amended postconviction petition, his postconviction counsel provided unreasonable assistance in the postconviction proceedings.

¶ 15    The Act provides a remedy to criminal defendants who have suffered substantial violations of their constitutional rights. *People v. Barcik*, 365 Ill. App. 3d 183, 190 (2006). The Act provides a three-stage mechanism for a defendant who alleges that he suffered a substantial deprivation of his constitutional rights. At the first stage, the trial court must independently review the petition within 90 days of its filing and determine whether it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2008). At this stage, the petition need present only a limited amount of detail so as to set forth the gist of a meritorious constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). If the petition survives initial review, the process moves to the second stage, where the trial court appoints counsel for the defendant, if necessary (725 ILCS 5/122-4 (West 2008)), and the State may file a motion to dismiss or an answer. 725 ILCS 5/122-5 (West 2008).

¶ 16    At the second stage of the proceedings, "[i]f the State moves to dismiss, the trial court may hold a dismissal hearing, which is still part of the second stage." *People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009) (citing *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998)). At this stage, to survive dismissal, the petition must make a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 246. The trial court is foreclosed from engaging in any fact finding at this stage, because all well-pleaded facts are to be taken as true unless they are rebutted by the record. *Wheeler*, 392 Ill. App. 3d at 308.

¶ 17    A postconviction petitioner is not entitled to an evidentiary hearing as a matter of right and, to require an evidentiary hearing, the petition's allegations must be supported by the record or by accompanying affidavits. *Coleman*, 183 Ill. 2d at 381. The propriety of a dismissal at the second stage is a question of law, which we review *de novo*. *People v. Simpson*, 204 Ill. 2d 536, 547 (2001).

-4-

¶ 18                                     A. Forfeiture Based on the Amended Petition

¶ 19        At the outset, we observe that there is an issue as to forfeiture, because postconviction counsel did not clearly assert that trial counsel was ineffective for failing to investigate an insanity defense and call Dillon as a witness. Clark argues that, to the extent a forfeiture occurred, he was denied reasonable assistance of postconviction counsel.

¶ 20        Trial counsel's failure to investigate an insanity defense was clearly raised in the original petition. Although the amended petition barely touched on the issue, the State moved to dismiss the claim on its merits, and the trial court did so. Accordingly, we do not consider the issue to be forfeited.

¶ 21                        B. Failure of Trial Counsel to Investigate an Insanity Defense

¶ 22        Clark contends that he made a substantial showing of ineffective assistance of counsel when he alleged that he pleaded guilty based on trial counsel's misrepresentation that there were no witnesses to testify on his behalf and when he provided an affidavit from Dillon showing that she would give testimony that would support an insanity defense.

¶ 23        Under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant arguing ineffective assistance of counsel must show not only that his or her counsel's performance was deficient but that the defendant suffered prejudice as a result. *People v. Houston*, 226 Ill. 2d 135, 143 (2007). Under the two-prong *Strickland* test, "a defendant must show that (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defendant in that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *Id.* at 144.

¶ 24        Whether defense counsel was ineffective for failure to investigate is generally determined by the value of the evidence that was not presented and the closeness of the evidence that was presented. *People v. Morris*, 335 Ill. App. 3d 70, 79 (2002). "In determining whether a defendant has been denied his right to the effective assistance of counsel, we use a 'fact sensitive analysis,' which seeks to measure 'the quality and impact of counsel's representation under the circumstances of the individual case.' " *Id.* (quoting *People v. Garza*, 180 Ill. App. 3d 263, 268 (1989)).

¶ 25        "As a general rule, whether to present certain witnesses is a tactical decision which will not be reviewed and cannot support a claim of ineffective assistance of counsel." *People v. Bell*, 152 Ill. App. 3d 1007, 1012 (1987). However, "[a]ttorneys have an obligation to explore all readily available sources of evidence that might benefit their clients." *Morris*, 335 Ill. App. 3d at 79 (citing *Brown v. Sternes*, 304 F.3d 677, 692 (7th Cir. 2002), and *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997) (*en banc*)). Defense counsel has a professional obligation, both legal and ethical, to explore and investigate a client's potential defense. *Id.* It is fundamental that this obligation necessarily requires discussion by defense counsel with the client regarding a possible defense. See *id.*

¶ 26        "Failure to conduct investigation and develop a defense has been found to be ineffective

assistance." *Id.* In particular, "the failure to interview witnesses may indicate incompetence when trial counsel knows of the witnesses and their testimony may be exonerating." *Bell*, 152 Ill. App. 3d at 1012 (citing *People v. Greer*, 79 Ill. 2d 103, 123 (1980)); see also *People v. Makiel*, 358 Ill. App. 3d 102, 107 (2005) (failure to investigate and develop a defense has been found to be ineffective assistance of counsel); *Morris*, 335 Ill. App. 3d at 79 ("Failure to present available witnesses to corroborate a defense has been found to be ineffective assistance.").

¶ 27    A defendant is legally insane if, "as a result of mental disease or mental defect, he lacks substantial capacity to appreciate the criminality of his conduct." 720 ILCS 5/6-2(a) (West 2006); *People v. Dwight*, 368 Ill. App. 3d 873, 879 (2006). "In a determination of defendant's sanity, a trier of fact may reject all expert testimony and base its determination solely on lay testimony." *Dwight*, 368 Ill. App. 3d at 880. "Of particular relevance are observations by lay witnesses made shortly before or after the crime was committed." *Id.*

¶ 28    Here, Clark alleged that Peccarelli failed to investigate a known witness who was offering to present evidence that could support an insanity defense. Dillon averred that she would testify that Clark was not taking his medications, that he said he heard voices telling him to stab her, that she knew he did not mean to harm her, and that it was his mental condition that prompted him to do what he did. Thus, taking Clark's allegations as true, and as supported by the accompanying affidavit from Dillon, Clark made a substantial showing that his counsel failed to investigate a witness who could have provided evidence that, as a result of mental disease, Clark lacked substantial capacity to appreciate the criminality of his conduct. That is, Clark made a substantial showing that counsel was deficient in failing to investigate Dillon as a witness who could support an insanity defense.

¶ 29    Further, Clark made a substantial showing that he suffered prejudice based on his counsel's failure. To establish the prejudice prong of an ineffective-assistance-of-counsel claim in connection with the entry of a guilty plea, the defendant must show a reasonable probability that, absent counsel's errors, the defendant would have pleaded not guilty and insisted on going to trial. See *People v. Hall*, 217 Ill. 2d 324, 335 (2005). Here, Clark did so, as he reasonably argued that he pleaded guilty only because counsel told him that there were no witnesses available to support a plausible defense. See *id.* at 335-36.

¶ 30    The State spends a considerable portion of its brief arguing that the dismissal was proper because Dillon's averments lack credibility for a variety of reasons. However, "credibility determinations are not made at the second stage of the proceedings." *Id.* at 336. When a defendant's claims are based upon matters outside the record, it is not the intent of the Act that the claims be adjudicated on the pleadings. *Coleman*, 183 Ill. 2d at 382. Rather, the function of the pleadings in a proceeding under the Act is to determine whether the defendant is entitled to a hearing. *Id.* Thus, "[u]nless positively rebutted by the record, factual disputes raised by the pleadings require determination of the truth or falsity of the supporting documents and cannot be resolved at a hearing on a motion to dismiss at the second stage of the postconviction process." *Morris*, 335 Ill. App. 3d at 85 (citing *Coleman*, 183 Ill. 2d at 381). "Further, the State assumed the truth of defendant's factual allegations by moving to dismiss his petition." *Hall*, 217 Ill. 2d at 336. Here, Clark's allegations, taken as true, constitute a plausible insanity defense, and issues about Dillon's credibility must be

determined after an evidentiary hearing. See *Morris*, 335 Ill. App. 3d at 85.

¶ 31    The State also suggests that Dillon's affidavit is insufficient because the averments are hearsay. However, the fact that some of her statements might have been inadmissable does not mean that she could not otherwise support a defense. Indeed, the overarching issue is whether counsel was ineffective for failing to investigate a plausible defense–a claim that is supported by Dillon's nonhearsay averments that she tried to contact Peccarelli and that her calls were not returned.

¶ 32    The State next contends that any decision not to investigate Dillon was reasonable given that Dillon's testimony would be insufficient to show that Clark was insane at the time of the attack and given that his plea agreement was favorable in light of his background and the nature of the crime. But, the nature of the plea agreement is irrelevant if Clark would have had a complete defense. Further, without having interviewed Dillon about the event, it would be impossible for counsel to determine that Dillon's testimony would be worthless, and her affidavit indicates otherwise. See *Bell*, 152 Ill. App. 3d at 1012-13. In making its argument, the State also misstates the record, asserting that Peccarelli had a fitness report showing no concern about Clark's fitness. The record indicates that a fitness evaluation was not completed once the issue was withdrawn, and Peccarelli specifically stated that she had not seen a written report. Regardless, an evaluation of Clark's fitness at that moment in time would not be determinative of his sanity on the day of the offense. Taking Clark's allegations as true, the State's argument that the decision not to investigate Dillon was a matter of strategy lacks merit at the second stage of postconviction proceedings. A determination of the matter requires an evidentiary hearing.

¶ 33    Citing *People v. Collins*, 202 Ill. 2d 59 (2002), the State next argues that the petition was correctly dismissed because Clark did not provide affidavits from his attorney and from mental health practitioners. The allegations in the petition must be supported by affidavits, records, or other evidence. 725 ILCS 5/122-2 (West 2008). If this documentation is not attached, the petition must explain why it is unavailable. *Id.*; *Hall*, 217 Ill. 2d at 332. However, in *Hall*, our supreme court held that the affidavit requirement of section 122-2 does not apply beyond the first stage of the proceedings. *Hall*, 217 Ill. 2d at 332; *People v. Barkes*, 399 Ill. App. 3d 980, 987 (2010). Thus, the State's argument is misplaced. In any event, Dillon's affidavit provided sufficient support for Clark's claim. As noted, an insanity defense may be supported by lay testimony. *Dwight*, 368 Ill. App. 3d at 880. Thus, affidavits from mental health practitioners were not required. As to counsel, had Clark provided an affidavit from Peccarelli, it would have either confirmed or denied that Peccarelli did not contact Dillon, and an evidentiary hearing would have been necessary in either case.

¶ 34    Finally, the State argues that Clark was not prejudiced by Peccarelli's advice because the record shows that he was fully admonished, he stated that his plea was voluntary, and the factual basis for the plea included the same material that Dillon included in her affidavit. "Although the trial court's admonitions cannot be disregarded as a mere formality, they are not sufficient in every circumstance to negate the effect of erroneous advice from defense counsel." *Hall*, 217 Ill. 2d at 337. Here, the factual basis for the plea did not include that Dillon would testify that she knew that Clark did not mean to harm her and that he committed the crime only because of his mental illness. Further, Clark was not asked

whether he fully discussed the case with his attorney, nor was he asked about his mental health or whether he felt coerced or pressured to plead guilty. Instead, he was simply asked if the plea was "voluntary," and Peccarelli answered for him when the court inquired if fitness was at issue. Thus, the court's admonishments do not overcome the showing of ineffective assistance of counsel. See generally *Hall*, 217 Ill. 2d at 339-40.

¶ 35                                    III. CONCLUSION

¶ 36    Clark made a substantial showing that his counsel was ineffective for failing to investigate an insanity defense. Accordingly, the judgment of the circuit court of Kane County is reversed, and the cause is remanded for further proceedings.

¶ 37    Reversed and remanded.