2022 IL App (1st) 210784-U

No. 1-21-0784

Order filed June 22, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 9155 |
| | ) | |
| JAVIER VALDEZ, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant stated an arguable claim that trial counsel was ineffective for failing to investigate witnesses who would have testified that he did not live with the victim at the time of the alleged sexual assaults. We reverse the circuit court's first stage dismissal of defendant's postconviction petition and remand the matter for second stage proceedings.

¶ 2    Following a jury trial, defendant was found guilty of two counts of predatory criminal sexual assault of his daughter, A.V., and was sentenced to 22 years' imprisonment. We affirmed defendant's convictions on direct appeal. *People v. Valdez*, 2019 IL App (1st) 161714-U.

Defendant filed a petition for postconviction relief, raising various claims of ineffective assistance of counsel and violation of his rights to due process and equal protection. He now appeals from the first stage dismissal of his petition, contending that he raised an arguable claim of ineffective assistance for trial counsel's failure to investigate witnesses who would have testified that defendant did not live with A.V. at the time of the sexual assaults. For the following reasons, we reverse and remand for second stage proceedings.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant was charged with two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2006)), which alleged that between September 3, 2007, and September 2, 2009, he knowingly committed acts of sexual penetration upon A.V. when she was under 13 years of age by making contact between his penis and her vagina and his mouth and her vagina. We previously set forth the facts from defendant's trial in *Valdez*, 2019 IL App (1st) 161714-U. We discuss them briefly here to the extent necessary, supplementing from the record where relevant.

¶ 5                                    A. Jury Trial

¶ 6      A.V. was 15 years old at the time of trial.[1] Her father is defendant, whom she identified in court. Defendant and A.V.'s mother were previously married to each other. A.V. lived with her parents and three of her siblings in South Beloit when she was six to seven years old.[2] At night,

---

[1] Based on the date of birth that A.V. testified to at trial, she is now an adult. However, we will refer to her by her initials to protect her privacy in this sexual assault case. See *People v. Munoz-Salgado*, 2016 IL App (2d) 140325 ¶ 1 n. 1.

[2] The trial court admitted A.V.'s testimony about defendant's sexual assaults of her in South Beloit pursuant to the State's motion to admit other-crimes evidence. These incidents were not among the assaults charged in the indictment.

defendant entered the bedroom that A.V. shared with her two sisters, put his hand in her pants, and rubbed her vagina. This occurred multiple times in South Beloit. A.V. told her mother that defendant touched her, but her mother did not believe her. A.V. also confronted defendant about him touching her, and he said that he would never do it again. However, after that conversation, defendant entered A.V.'s bedroom at night, removed her underwear, and put his penis in her vagina. This occurred "[a] couple times" in South Beloit. Defendant also forced A.V. to touch his penis in her bedroom at night in South Beloit.

¶ 7     In 2007, A.V., her parents, and her siblings moved from South Beloit to Lyons. In Lyons, defendant entered A.V.'s bedroom at night, removed her underwear, and put his penis in A.V.'s vagina. He moved up and down and eventually stopped and left the bedroom. This occurred one time in Lyons. In 2007 or 2008, A.V. and her family moved to Chicago. One night when A.V. was sleeping alone in her parents' bedroom, defendant entered the room, removed her underwear, put his mouth on her vagina, and licked inside it. Defendant stopped licking A.V.'s vagina when she moved, then started again. A.V. moved again, so defendant stopped and left the room. This occurred one time in Chicago. A.V. could tell that the man who assaulted her was defendant because she could see him, even though it was dark, and she recognized his "distinct smell." Defendant and A.V.'s mother eventually stopped living together and divorced in 2008. A.V. occasionally visited defendant beginning in 2011. In April 2013, A.V. told her mother that defendant had touched her because she became "scared he was going to start doing it again" after he touched her chest when she was visiting him. Police were contacted and A.V. was examined by a doctor that month.

¶ 8    A.V's mother testified that she was previously married to defendant, whom she identified in court, and defendant is A.V.'s father. Defendant, A.V.'s mother, and A.V. lived in South Beloit from approximately November 2005 to July 2007, and in Lyons from approximately August 2007 to February 2008. They moved to Chicago in March 2008. They stopped living with defendant in 2009 and were divorced August 2010. A.V. went with her mother when she separated from defendant in 2009. A.V. occasionally visited defendant thereafter. In April 2013, A.V. told her mother what occurred with defendant and police were contacted a few days thereafter.

¶ 9    Dr. Marjorie Fujara, a child abuse pediatrician at Stroger Hospital, testified that she examined A.V. on April 10, 2013. A.V. said that her father touched her "girl part" with his hands, mouth, and "boy part." Dr. Fujara's examination of A.V. indicated that her vagina had been penetrated, consistent with a history of sexual abuse.

¶ 10    Defendant presented no evidence. The jury found defendant guilty of both counts.

¶ 11                    B. Posttrial Motions, Sentencing, and Direct Appeal

¶ 12    After trial, defendant requested that the court appoint an assistant Public Defender to represent him due to his disputes with trial counsel. Specifically, defendant claimed that trial counsel did not call witnesses who would have testified that defendant lived with his current wife, not A.V. and her mother, at the time of the sexual assaults. After a hearing, the court denied defendant's request to appoint an assistant Public Defender. Trial counsel later withdrew, and defendant retained new counsel. New counsel filed a motion for a new trial and argued, in relevant part, that trial counsel was ineffective for failing to interview or call defendant's friends and family members, who would have testified that defendant did not live with A.V. at the time of the charged assaults. The trial court denied this motion, explaining that "[l]iving somewhere else is not an

alibi" and that trial counsel properly focused his defense on reasonable doubt by cross-examining the State's witnesses.

¶ 13     The trial court sentenced defendant to a total of 22 years' imprisonment. On direct appeal, we affirmed defendant's convictions over his contentions that "(1) trial counsel was ineffective for failing to investigate and call potential alibi witnesses, and (2) posttrial counsel was ineffective for failing to adequately support the allegations made in defendant's motion for new trial." *Valdez*, 2019 IL App (1st) 161714-U, ¶ 2. We found that the record was insufficient to review defendant's claims of ineffectiveness and that those claims were better suited for postconviction proceedings. *Id.* ¶ 39.

¶ 14                                   C. Postconviction Proceedings

¶ 15     Defendant filed a *pro se* postconviction petition, which reasserted his claim that trial counsel was ineffective for failing to interview and call witnesses who would have testified that defendant did not live with A.V. at the time of the sexual assaults. Defendant alleged that he provided counsel with a list of these witnesses during a jail visit prior to trial. Defendant's parents, Gaudencio and Josefina Valdez, his current wife, Viridiana Cruz, his brother, Angel Valdez, his niece, Angela Ramirez, his friend, Jorge Avila, and his divorce attorney would all testify that defendant separated from A.V.'s mother in March 2007 and did not live with her or A.V. thereafter.

¶ 16     Defendant attached seven affidavits as exhibits to his petition. His own affidavit states that, prior to trial, he told counsel that he separated from A.V.'s mother and stopped living with her in March 2007, that he lived in Brookfield, Maywood, Barrington, and Berwyn after separating from A.V.'s mother, and that he did not live with A.V.'s mother and A.V. between September 2007 and

September 2009. Defendant gave counsel a list of witnesses who could establish his residential history, but counsel refused to call these witnesses at trial.

¶ 17    Jorge Avila, defendant's friend, attests that defendant lived with him in Brookfield after defendant and A.V.'s mother separated in March 2007. Approximately six months later, defendant moved in with his parents. On several occasions, Avila accompanied defendant to pick up his children from A.V.'s mother's home for weekend visits, and he never saw defendant go inside A.V.'s mother's home. Trial counsel never contacted Avila. Gaudencio Valdez, defendant's father, attests that defendant separated from A.V.'s mother in 2007 and moved to Gaudencio and his wife's home in Maywood.[3] Defendant lived with his parents for more than two years. Gaudencio sometimes accompanied defendant to A.V.'s mother's home to pick up defendant's children and defendant did not go inside A.V.'s mother's home because they were "still having problems." Gaudencio wanted to speak with trial counsel and was told by other family members that he would be called to testify, but he was not. Josefina Valdez, defendant's mother, attests that defendant lived with her and Gaudencio in Maywood from fall 2007 to winter 2009, when he was in the process of divorcing A.V.'s mother. Trial counsel never contacted Josefina or any of defendant's family members, all of whom were available and willing to testify. Viridiana Cruz, defendant's current wife, attests that she met defendant in summer 2007. Defendant lived in Brookfield, Maywood, Berwyn, and Barrington, from spring 2007 through April 2013. Defendant's children sometimes visited him at these homes. Cruz was willing to testify, but trial counsel never contacted

_____

[3] Several of the witnesses share the last name Valdez, so we will refer to them by their first names for clarity.

her. Angel and Josie Valdez, defendant's brother and sister, attest that they were the primary points of contact with counsel during defendant's case and that counsel did not interview any witnesses.

¶ 18 The circuit court dismissed defendant's petition at the first stage. The court found that counsel's decision not to call these witnesses was sound trial strategy because they were not eyewitnesses to the sexual assaults. The court also concluded that defendant was not prejudiced by counsel's decision not to call these witnesses because the evidence of his guilt was overwhelming. The court highlighted Dr. Fujara's testimony that her observations of A.V. were consistent with penetration and a history of sexual abuse, and A.V.'s testimony that defendant sexually abused her.

¶ 19 Defendant timely appealed.

¶ 20                                    II. ANALYSIS

¶ 21 Defendant contends that the circuit court should not have dismissed his postconviction petition at the first stage because he raised an arguable claim that trial counsel was ineffective for failing to investigate the witnesses who would have testified that he did not live with A.V. between September 2007 and September 2009, when the charged sexual assaults occurred.

¶ 22 Proceedings under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) consist of three stages of review. *People v. Johnson*, 2018 IL 122227, ¶ 14. At the first stage, a defendant's petition must only present the "gist" of a constitutional claim. *People v. Bailey*, 2017 IL 121450, ¶ 18. The court must take a defendant's allegations as true and draw all reasonable inferences in favor of advancing the petition. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 18. The court must give *pro se* petitions a liberal construction, reviewing them with a lenient eye and allowing borderline cases to proceed. *People v. Hodges*, 234 Ill. 2d 1, 21 (2009). The circuit court

should only dismiss a petition at the first stage if a defendant's claims are " 'frivolous or [are] patently without merit' " (*People v. Boykins*, 2017 IL 121365, ¶ 9 (quoting 725 ILCS 5/122-2.1(a)(2) (West 2020)), which means that the claims have "no arguable basis either in law or in fact" (*Boykins*, 2017 IL 121365, ¶ 9). "[T]he threshold for a petition to survive the first stage of review is low." *People v. Allen*, 2015 IL 113135, ¶ 24. We review the dismissal of a postconviction petition at the first stage *de novo* (*id.*), meaning that we perform the same analysis that the circuit court would perform (*People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 68).

¶ 23    A criminal defendant has the right to effective assistance of trial counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668 (1984). To survive first-stage review, a postconviction petition alleging ineffective assistance must show that " '(i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced.' " (Emphasis in original.) *People v. Tate*, 2012 IL 112214, ¶ 19 (quoting *Hodges*, 234 Ill. 2d at 17). We first consider whether defendant has established arguable prejudice.[4] To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 24    The State's theory of this case was premised on defendant living with A.V. when he sexually assaulted her. In its opening statement, the State told the jury that that A.V.'s "rapist was

---

[4] We address prejudice first because understanding how defendant's witnesses may have changed the trial will illustrate why counsel's decision not to investigate them was arguably unreasonable. See *People v. Clark*, 2011 IL App (2d) 100188, ¶ 24. ("Whether defense counsel was ineffective for failure to investigate is generally determined by the value of the evidence that was not presented and the closeness of the evidence that was presented.").

living under the same roof as she was" and that she was "lying asleep safely in her bed" when defendant assaulted her. A.V. testified that defendant assaulted her in her bedroom in Lyons, where she lived with defendant in 2007, and in her parents' bedroom in Chicago, where they lived in 2007 and 2008. A.V.'s mother testified that she, defendant, and A.V. lived in Lyons from August 2007 to March 2008, and then in Chicago until 2009, when she and defendant separated. So, the State's witnesses established that defendant lived with A.V. in Lyons and Chicago from 2007 to 2009, and that the sexual assaults occurred at those residences during that time. Defendant presented no evidence to the contrary.

¶ 25    The witnesses who submitted affidavits in support of defendant's petition raise doubts about the State's theory. Defendant's witnesses maintain that he did not live with A.V. at any point after spring 2007. According to Jorge Avila, defendant separated from A.V.'s mother and moved into Avila's home in Brookfield in March 2007, then moved to his parents' home in Maywood in September 2007 and lived there until at least September 2009. Defendant's parents corroborate that he lived with them in Maywood from fall 2007 through winter 2009. Defendant's current wife states that he lived in Brookfield, Maywood, Barrington, and Berwyn from spring 2007 through April 2013. Accepting these witnesses' affidavits as true, as we must at this stage (see *Allen*, 2015 IL 113135, ¶ 25), the State's theory that defendant sexually assaulted A.V. while living with her in Lyons and Chicago between 2007 and 2009 becomes more questionable than it was at trial, when it was unrebutted.

¶ 26    The witnesses also raise doubts about whether defendant was ever in a bedroom with A.V. in Lyons or Chicago between 2007 and 2009. The witnesses attest that, after defendant separated from A.V.'s mother in spring 2007, A.V. visited defendant at his homes, but none of those homes

were in Lyons or Chicago. Avila and Gaudencio attest that they occasionally drove defendant to pick up A.V. from A.V.'s mother's home, and that defendant never went inside because of his conflicts with A.V.'s mother. Altogether, the witnesses describe a scenario in which defendant did not live with A.V. and did not even have access to her bedrooms in Lyons or Chicago after spring 2007. That is, the witnesses arguably support a theory that defendant did not have the opportunity to commit the assaults that A.V. testified to. These witnesses may have introduced sufficient reasonable doubt to change the outcome of the trial, so defendant has established arguable prejudice.

¶ 27    The State contends that defendant's witnesses do not support an alibi defense because they do not "place defendant in a specific location at a specific time that renders the commission of either crime impossible." We agree that defendant's witnesses do not conclusively establish that it was impossible for him to have sexually assaulted A.V. between 2007 and 2009. We also recognize that, in a child sexual assault case, the State does not have to prove the precise date of the assault (*People v. Guerrero*, 356 Ill. App. 3d 22, 27 (2005)), and the victim's "inability to remember *exact* dates and times merely affects the weight to be given [her] testimony and, *taken alone*, does not create reasonable doubt" ((Emphasis added.) *People v. Foley*, 206 Ill. App. 3d 709, 715 (1990)). However, these witnesses raise the possibility that the assaults did not occur during the two-year window or at the locations that A.V. testified to, which could affect her credibility. See *People v. Letcher*, 386 Ill. App. 3d 327, 334 (2008). Alternatively, if the assaults *did* occur at the times and locations that A.V. testified to, then defendant may not have been the man who committed them. To be clear, we make absolutely no determinations, or even suggestions, about A.V.'s credibility. We are simply considering what impact these witnesses would have had if counsel had interviewed

them and called them at trial. See *Clark*, 2011 IL App (2d) 100188, ¶ 24. It is arguable that they would have raised reasonable doubt about defendant's guilt under the theory that the State presented. Accordingly, we find that defendant has stated arguable prejudice under *Strickland*.

¶ 28    We next consider whether defendant has stated an arguable claim that counsel's conduct was objectively unreasonable. "Decisions concerning which witnesses to call at trial and what evidence to present on defendant's behalf ultimately rest with trial counsel" and "are generally immune from claims of ineffective assistance." *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 79. However, "attorneys have an obligation to explore all readily available sources of evidence that might benefit their clients." (Internal quotations omitted.) *Clark*, 2011 IL App (2d) 100188, ¶ 25. Failure to investigate and present available witnesses to corroborate a defense can constitute ineffective assistance. *Id.* ¶ 26.

¶ 29    Defendant maintains that he told counsel that he did not live with A.V. during the time of the charged assaults, September 2007 to September 2009. He also provided counsel with the names of witnesses who would testify to his residential history from 2007 to 2009. The witnesses attest that counsel did not interview them. "An attorney who fails to conduct reasonable investigation and interview witnesses cannot be found to have made decisions based on valid trial strategy." *People v. Cooper*, 2013 IL App (1st) 113030, ¶ 57. "In particular, 'the failure to interview witnesses may indicate incompetence when trial counsel knows of the witnesses and their testimony may be exonerating.' " *Clark*, 2011 IL App (2d) 100188, ¶ 26 (quoting *People v. Bell*, 152 Ill. App. 3d 1007, 1012 (1987)). Taken as true, the affidavits indicate that counsel dismissed a potential defense out of hand without interviewing the witnesses who would have supported that defense. That is sufficient to allege arguably deficient performance.

¶ 30    The State offers several strategic reasons why counsel did not call these witnesses at trial. For example, the State contends that the witnesses are not entirely consistent about defendant's residential history, and that they are biased due to their close personal relationships with defendant. However, the key is counsel's apparent failure to *interview* these witnesses. If counsel did not interview the witnesses, then he cannot have made informed strategic decisions about whether to call them at trial. See *Cooper*, 2013 IL App (1st) 113030, ¶ 57. Moreover, our supreme court has indicated that evaluation of trial strategy is "inappropriate for the first stage" of postconviction proceedings and is "more appropriate to the second stage *** where the petitioner's burden is to make a substantial showing of a constitutional violation." *Tate*, 2012 IL 112214, ¶ 22. Accordingly, we find that defendant has arguably established both prongs of ineffectiveness under *Strickland*. The circuit court should not have dismissed his postconviction petition at the first stage and should have instead advanced it to the second stage.

¶ 31                                    III. CONCLUSION

¶ 32    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand this matter for second stage postconviction proceedings.

¶ 33    Reversed and remanded.