NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (4th) 210106-U

NO. 4-21-0106

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 23, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| QUENTIN BATES, | ) | No. 11CF953 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Adam Giganti, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held:*   The appellate court reversed the trial court's judgment summarily dismissing defendant's postconviction petition at the first stage because defendant's claim that his trial counsel rendered ineffective assistance by failing to locate or interview an alibi witness was arguably meritorious.

¶ 2    In January 2016, a jury found defendant, Quentin Bates, guilty of one count of home invasion (720 ILCS 5/12-11(a)(1) (West 2010)) and two counts of aggravated criminal sexual assault (*id.* § 11-1.30(a)(1)). The trial court sentenced defendant to consecutive sentences of 40 years and 30 years for the aggravated criminal sexual assaults and a concurrent sentence of 30 years for home invasion.

¶ 3    Defendant's convictions and sentence were affirmed on direct appeal. *People v. Bates*, 2018 IL App (4th) 160255, ¶ 5, 112 N.E.3d 657.

¶ 4    In November 2020, defendant *pro se* filed an amended petition under the

Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), alleging, among other things, that his trial counsel rendered ineffective assistance by failing to locate and interview an alibi witness. In January 2021, the trial court entered an order summarily dismissing defendant's amended petition as patently without merit.

¶ 5        Defendant appeals, arguing that the trial court erred by dismissing his amended postconviction petition at the first stage because his claim that trial counsel rendered ineffective assistance by failing to investigate an alibi witness was arguably meritorious. Because we agree with defendant, we reverse the trial court's judgment and remand for second-stage proceedings.

¶ 6                                    I. BACKGROUND

¶ 7                            A. The Charges Against Defendant

¶ 8        In November 2011, the State charged defendant with (1) home invasion, (2) aggravated criminal sexual assault (penis to mouth), and (3) aggravated criminal sexual assault (penis to vagina). 720 ILCS 5/12-11(a)(1) (West 2010); *id.* § 11-1.30(a)(1). The charges alleged, generally, that in September 2011, defendant broke into A.P.'s Springfield apartment and, while armed with a knife, sexually assaulted her.

¶ 9                            B. The State's Notice of Intent

¶ 10        In October 2013, the State filed notice of its intent to introduce evidence of other sex offenses. 725 ILCS 5/115-7.3(b) (West 2012). The State alleged, generally, that in October 2011, defendant broke into C.H.'s Springfield dwelling and, while armed with a knife, sexually assaulted her. The State alleged that in both A.P.'s case and C.H.'s case, the offender broke in through a window while the victim was asleep and choked the victim during the sexual assault. The State also alleged that, following DNA analysis of the sexual assault kits from both cases, (1) defendant could not be excluded as a contributor to male DNA recovered from A.P.'s body

and (2) defendant's DNA profile matched DNA recovered from C.H.'s body.

¶ 11    In November 2013, the trial court granted the State's motion.

¶ 12                           C. The Jury Trial

¶ 13    In January 2016, defendant's case proceeded to jury trial.

¶ 14    A.P. testified that on September 19, 2011, she lived in an apartment in Springfield, Illinois, with her one-year-old son. Just before midnight, she fell asleep on a couch in her living room. Some time later, she awoke to a noise in her kitchen. She then saw a black male with his face covered approaching her. The man put his hands around her neck and touched her side with a knife. The man grabbed A.P., turned her over, and put his penis in her vagina. He then moved A.P. into the bedroom, threw her to the ground, and told her to perform oral sex on him. Afterward, the man turned A.P. over, put his penis back into her vagina, and eventually ejaculated on her back. A.P. testified that she did not get a good look at the man because the apartment was dark and the man's face was covered. A.P. later discovered in a downstairs bedroom a window screen removed from the window. A.P. called 911 after she heard the man leave through the front door.

¶ 15    Angela Royer of the Springfield Police Department testified that she was dispatched to A.P.'s address at 1:26 a m. on September 19, 2011, and A.P. was taken to the hospital shortly thereafter. Nurse Theresa Duncan testified that she swabbed A.P.'s mouth, vagina, vaginal area, and outer anal area for bodily fluids.

¶ 16    Corey Formea, a forensic scientist for the Illinois State Police Forensic Crime Laboratory, testified that semen was found on A.P.'s anal swab. His analysis of the deoxyribonucleic acid (DNA) evidence concluded that defendant could not be excluded as a contributor of the DNA in the semen and that this DNA profile would occur in "one in [every] 840 trillion blacks."

¶ 17    C.H. testified that on October 6, 2011, she was asleep in her home in Springfield, Illinois, when she awoke to find a black male holding a knife to her throat. The man licked her breasts and vagina. He then moved her downstairs while choking her. C.H. gave him money out of her purse, and he left. At some point, C.H. discovered a window screen on her ground floor had been cut. After defendant left, C.H. called the police and went to the hospital. At the hospital, C.H. could only give a vague description of the man "because he had a T-shirt over his head."

¶ 18    Nurse Meredith Pierceall testified that she swabbed C.H.'s neck, chest, breasts, and genitals for bodily fluids.

¶ 19    Dana Pitchford, a forensic scientist for the Illinois State Police Forensic Crime Laboratory, testified that saliva was found on C.H.'s breast swab. Her analysis of the DNA evidence concluded that the male DNA found in the saliva matched defendant's DNA and that this DNA profile would occur in "one in 2.8 quintillion black[s]."

¶ 20    A video recorded interview of defendant was played for the jury. During the interview, the police officers investigating both sexual assault cases confronted defendant with the DNA evidence against him. Defendant repeatedly and vigorously denied that he had ever sexually assaulted anyone. The State then rested.

¶ 21    James Ravellette, a forensic scientist employed at an "independent DNA criminal forensic laboratory," testified as a defense witness that his own statistical analysis concluded that 486 people could have contributed to the male DNA profile found on A.P.'s anal swab.

¶ 22    Defendant declined to testify on his own behalf.

¶ 23    The jury found defendant guilty of all counts.

¶ 24                    D. The Sentence and Direct Appeal

¶ 25    In April 2016, the trial court sentenced defendant to consecutive terms of 40 years

and 30 years for the aggravated criminal sexual assaults (counts II and III) and a concurrent term of 30 years for the home invasion (count I).

¶ 26        This court affirmed defendant's convictions and sentence on direct appeal. *Bates*, 2018 IL App (4th) 160255, ¶ 5.

¶ 27                              E. The Post-Conviction Petition

¶ 28        In August 2020, defendant *pro se* filed a petition for postconviction relief pursuant to the Act. 725 ILCS 5/122-1 *et seq.* (West 2020). In November 2020, defendant *pro se* filed an amended postconviction petition, which was nearly identical to the first, alleging that his trial counsel and appellate counsel rendered ineffective assistance in multiple ways. Relevant to this appeal, defendant claimed his trial counsel was ineffective by failing to contact or interview an alibi witness. Defendant alleged the following:

> "Counsel failed to contact or interview defendant's known [alibi-witness], who resided at 1824 S. 16th Street [in Springfield] despite defendant not knowing they're [*sic*] full name [*sic*] and knowing only their 'street name' of 'Spice.' [Trial counsel] was informed of the alibi witness and they're [*sic*] address months before trial, and specifically informed that the defendant was in they're [*sic*] presence from 9:00 p m. September 18th, 2011 to 2:30 a.m. September 19th, 2011, playing [Yahtzee], which was exculpatory."

¶ 29        Defendant also raised a claim of actual innocence based upon his alibi. In that claim, defendant additionally alleged that (1) he was with three other people at the 1824 S. 16th residence, (2) he knew only one of the three alibi witnesses, and (3) he knew her only as "Spice."

¶ 30        Defendant attached his own affidavit to the petition, in which he averred the following facts:

"Prior to [trial counsel] taking my case, I told him that I was at 1824 S. 16th Street with a friend from 9:00 p.m. September 18th, 2011 to 2:30 a.m. September 19, 2011, playing board games, and that it was impossible for me to have committed the A.P. crime. *** About a month after [trial counsel] was hired, he again asked for the address of my alibi witness, which I again gave him so he could go there and talk to her.

My trial date was approaching *** and I had asked if he had contacted my alibi witness, and [trial counsel] would only say 'I will'. However, when trial started, and I asked [trial counsel] if my alibi witness was in the hallway, [trial counsel] said "no," but that he would try and have her there before the defense put our evidence on. *** I found out after my trial that [trial counsel] never even contacted my alibi witness who would have identified the other people present, despite being told 'repeatedly' where 'Spice' lived.

\* \* \*

In March 2020, I had family members go to 1824 S. 16th Street to locate my alibi witnesses, and found that after my trial, she had moved to Chicago! However, the Pandemic (Covid-19) hit and Stateville Correctional Center, as well as Chicago, went on 'quarantine' and stay at home orders. The Covid-19 has prevented family members from travel [*sic*] to locate my alibi witnesses to obtain their affidavits that I have diligently sought to obtain, but my incarceration prevents me from locating this witness myself without an investigator."

¶ 31    In January 2021, the trial court entered a written order dismissing defendant's amended postconviction petition because it was "patently without merit." The court did not

- 6 -

provide further comment.

¶ 32        This appeal followed.

¶ 33                                II. ANALYSIS

¶ 34        Defendant appeals, arguing that the trial court erred by dismissing his amended postconviction petition at first stage because his claim that trial counsel rendered ineffective assistance by failing to investigate an alibi witness was arguably meritorious.

¶ 35                            A. The Applicable Law

¶ 36                        1. *The Post-Conviction Hearing Act*

¶ 37        The Act (725 ILCS 5/122-1 *et seq.*) (West 2020)) provides a method by which a defendant can assert that his conviction was the result of a substantial denial of his constitutional rights. *People v. Tate*, 2012 IL 112214, ¶ 8, 980 N.E.2d 1100. A proceeding under the Act contains three stages. *Id.* ¶ 9.

¶ 38        At the first stage, the trial conducts its own review of the postconviction petition to determine whether it is " 'frivolous or patently without merit.' " *People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001) (quoting 725 ILCS 5/122-2.1(a) (West 1998)). A petition "may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12, 912 N.E.2d 1204, 1209 (2009). A petition that lacks an arguable basis either in law or in fact is one that is based on an indisputably meritless legal theory or a fanciful factual allegation. *Id.* at 16.

¶ 39        "Because most petitions are drafted at this stage by defendants with little legal knowledge or training, *** the threshold for survival [is] low." *Id.* at 9. At the first stage, *pro se* petitions should be construed liberally, "with a lenient eye, allowing borderline cases to proceed." (Internal quotation marks omitted.) *Id.* at 21.

- 7 -

¶ 40       The summary dismissal of a postconviction petition is reviewed *de novo. Tate*,
2012 IL 112214, ¶ 10.

¶ 41                         2. *Ineffective Assistance of Counsel*

¶ 42       A postconviction claim of ineffective assistance of counsel is governed by the
principles established in *Strickland v. Washington*, 466 U.S. 688 (1984). *People v. Brown*, 2017
IL 121681, ¶ 25, 102 N.E.3d 205. At the first stage, a postconviction claim of ineffective assistance
may not be dismissed "if [(1)] it is *arguable* that counsel's performance fell below an objective
standard of reasonableness and [(2)] it is *arguable* that defendant was prejudiced." (Emphases
added.) *Hodges*, 234 Ill. 2d at 17.

¶ 43       Trial counsel has a professional duty to "independently investigate any possible
defenses." *People v. Domagala*, 2013 IL 113688, ¶ 38, 987 N.E.2d 767. When "counsel had reason
to know, from an objective standpoint, that a possible defense *** was available, failure to
investigate fully can constitute ineffective assistance of counsel." (Internal quotation marks
omitted.) *Id.* ¶ 38. "In particular, the failure to interview witnesses may indicate incompetence
when trial counsel knows of the witness and their testimony may be exonerating." (Internal
quotation marks omitted.) *People v. Clark*, 2011 IL App (2d) 100188, ¶ 26, 957 N.E.2d 162.

¶ 44                              B. This Case

¶ 45       Defendant argues that the trial court erred by summarily dismissing his
postconviction claim of ineffective assistance of counsel for failure to investigate an alibi witness
because the claim was arguably meritorious. The State responds that the trial court properly
dismissed defendant's petition because (1) defendant failed to attach an affidavit from the alibi
witness without providing a sufficient explanation for its absence and (2) defendant cannot
"arguably establish prejudice" because the DNA evidence and other crimes evidence against

defendant was "overwhelming." We agree with defendant and reverse and remand for further proceedings.

¶ 46                              1. *Absence of an Alibi Witness Affidavit*

¶ 47         Section 122-2 of the Act requires the petition "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2020). The State contends that defendant's petition was deficient because in his explanation for the absence of the alibi witness affidavit defendant did not state (1) what efforts he made to contact "Spice" prior to March 2020, (2) what efforts were made by electronic means to contact "Spice," or (3) why in-person contact was necessary to obtain an affidavit.

¶ 48         Section 122-2 requires that defendant merely "state why the [affidavit is] not attached." *Id.* The statute contains no further requirement. In the present case, defendant asserted that, since his trial, (1) "Spice" had moved from Springfield to Chicago, (2) defendant had been incarcerated, and (3) his and his family's efforts to locate Spice in Chicago have been stymied by Covid-19 restrictions. The State provides no authority that requires defendant to provide the details urged by the State. We conclude, based on our *de novo* review, that defendant's explanation for the absence of the alibi witness affidavit in this case was reasonable and sufficient, particularly given the lenient eye with which we are to review *pro se* petitions at the first stage.

¶ 49         2. *Defendant's Claim of Ineffective Assistance Was Arguably Meritorious*

¶ 50         Defendant asserted in his petition that, from 9 p.m. on September 18, 2011, to 2:30 a.m. on September 19, 2011, he was at 1824 S. 16th Street in Springfield, playing "Yahtzee" with three other people. He did not know two of them and knew the third only as "Spice." Defendant asserted Spice "resided at" the 1824 S. 16th Street address. Defendant further asserted that he relayed this information to his trial counsel on more than one occasion prior to trial and counsel

told defendant that he would go to the address to determine the identities of Spice and the other two potential witnesses. According to defendant's petition, trial counsel never investigated, contacted, or interviewed defendant's alibi witnesses.

¶ 51 At trial, A.P. testified that she called the police immediately after the sexual assault. Officer Royer testified that she was dispatched to A.P.'s address at 1:26 a m. on September 19, 2011. Accordingly, had Spice or the other two unknown witnesses testified that defendant was at 1824 S. 16th Street from 9:30 p m. to 2:30 a.m. the night of the assault on A.P., their testimony would be exonerating, if believed by the jury.

¶ 52 To survive dismissal at the first stage, the petition must establish that counsel's performance was *arguably* deficient and that deficient performance *arguably* prejudiced defendant. Defendant asserted that his counsel was aware of the existence of the alibi defense and failed to investigate it. Defendant further asserted that counsel's failure to investigate precluded defendant from presenting an alibi defense that was "potentially exculpatory." Taking the allegations in the petition as true, and construing them liberally, as we must at this stage, defendant's petition satisfies this extremely low pleading standard.

¶ 53 The State argues that defendant cannot establish that he was arguably prejudiced because the evidence against him at trial was "overwhelming." The State points out that, on direct appeal, this court rejected defendant's claim of ineffective assistance of trial counsel based upon counsel's handling of defendant's statement to police because defendant could not establish prejudice due to the strength of the evidence against him. The State notes in particular this court's comments that, "[d]efendant's link to the sexual assault on C.H., which was admissible to show defendant's propensity to commit similar crimes, was indisputable. Moreover, the DNA evidence linking defendant to A.P.'s assault was overwhelming." *Bates*, 2018 IL App (4th) 160255, ¶ 53.

¶ 54    The State's argument, however, disregards that, on direct appeal, this court was reviewing a different claim and applying a different legal standard. On direct appeal, defendant claimed his trial counsel was ineffective for failing to object to a redacted interrogation video and failing to move to suppress the video. *Bates*, 2018 IL App (4th) 160255, ¶ 44. Defendant was required to show that, but for his counsel's errors, there was a reasonable probability that the outcome of the proceeding would have been different. *Id.* ¶ 48 (citing *People v. Houston*, 229 Ill. 2d 1, 4, 890 N.E.2d 424, 426 (2008)). This court's analysis on direct appeal did not concern a potentially exonerating alibi defense but instead the effect of defendant's interrogation video on the jury's verdict. Weighed against the strength of the DNA evidence and other-crimes evidence, the potential exclusion of defendant's self-serving denials did not create a reasonable probability that the jury would have acquitted defendant.

¶ 55    In contrast, in the present case, defendant asserted in a postconviction petition that his trial counsel was ineffective for failing to investigate an alibi witness. At the first stage, he was required to show only that he was *arguably* prejudiced by counsel's failure to investigate. Put another way, he was required to show only that there was *arguably* a reasonable probability that the outcome of the trial would have been different if counsel had investigated and presented his alibi defense. We acknowledge and reaffirm our prior comments that the evidence against defendant was "overwhelming" and note that the DNA evidence in this case was particularly strong. However, had an alibi defense been presented, the jury would have been free to reject the DNA evidence if the jury found the alibi testimony more compelling. Accordingly, it is at least *arguable* that the jury may have reached a different decision if presented with a witness or multiple witnesses who testified that defendant was with them at the time A.P. was being assaulted.

¶ 56    In reaching this conclusion, we emphasize that, at the first stage, a reviewing court

does not make credibility determinations. *Tate*, 2012 IL 112214, ¶ 9. Indeed, the Illinois Supreme Court has cautioned that "a belief that allegations are unlikely, without more, is insufficient to justify dismissing a petition." *Hodges*, 234 Ill. 2d at 19. Accordingly, however unlikely it is that a jury would reject the DNA and other-crimes evidence in favor of Spice's alibi testimony, the threshold for surviving first-stage review of a postconviction claim of ineffective assistance for failure to investigate an alibi defense is exceedingly low and defendant has met that threshold. Because defendant's petition was not based on an "indisputably meritless legal theory," (*id.* at 16), the trial court erred by summarily dismissing the petition at the first stage of postconviction proceedings.

¶ 57    In reaching this conclusion, we emphasize that we offer no opinion as to whether defendant will be able to meet his higher burden at the second stage to demonstrate a substantial denial of a constitutional right.

¶ 58                    III. CONCLUSION

¶ 59    For the reasons stated, we reverse the trial court's judgment and remand for second stage proceedings.

¶ 60    Reversed and remanded.